Myers, J.
 

 In these two companion cases the only question is the constitutionality of Section 5546-20», General Code. Both are original actions in mandamus.
 

 In case No. 26848 the relators are Ohio corporations
 
 *326
 
 operating detention hospitals in Cuyahoga county, and are seeking a writ of mandamus requiring the respondents, the Auditor of State, the Director of Finance, the Director of Public Welfare, and the Treasurer of State to withhold from Cuyahoga county certain funds collected under the Retail Sales' Tax Act and to deduct from that county’s share of such funds, otherwise distributable to it, certain amounts owing to relators of Cuyahoga county for the housing and maintenance of insane persons as provided in Section 3155, General Code, and to order the proper amounts to be paid to the relators for the cost of maintenance and care of such insane persons for the months of October and November, 1937.
 

 The respondents filed an answer in the Cuyahoga county case, admitting the material facts contained in the petition, and alleging as a defense the filing of the Montgomery county action No. 26864, wherein the relator is attacking the constitutionality of Section
 
 5546-20a,
 
 General Code. The answer further states that respondents should not be compelled to make distribution in the Cuyahoga county case until this' court has determined upon the constitutionality of the section of the General Code in question. Since that is the only defense filed in the Cuyahoga county case we shall turn our attention to the Montgomery county cause No. 26864. The determination of the question in the Montgomery county cause will likewise be conclusive of the issue in the other action.
 

 In case No. 26864 the relators constitute the Board of County Commis'sioners of Montgomery county, and are seeking a peremptory writ to compel the respondents to pay Montgomery county its full distributive share of the proceeds of the sales tax distributable to that county for December, 1937, without deducting the net amount due the state from Montgomery county as required by Section 5546-20u, General Code. The
 
 *327
 
 relators, in their petition, state “that the 91st General Assembly of the state of Ohio enacted what is known as a retail sales tax, being Sections 5546-1 to 5546-25 of the General Code of Ohio, which enactment became effective on January 1, 1937. The plaintiffs further aver that in pursuance of this act, local governments were to receive a distributive share, and said share for each county was to be estimated by the Tax Commission of the state of Ohio; that on the eighteenth day of January, 1937, the Tax Commission of Ohio duly certified to the County Auditor of Montgomery county, in pursuance of Section 5546-20 of the General Code, the estimated sum of seven hundred six thousand, one hundred sixty-five dollars and sixteen cents ($760,-165.16), to be used by said county as a local government fund; that the Budget Commission of said county, in pursuance to said section, on the twentieth day of January, 1937, duly apportioned the estimated amount certified to it by the Tax Commission of Ohio according to the needs' among the several subdivisions of the county, and issued to each subdivision a certificate of the amount so allotted, all as authorized and required by law; that certain subdivisions of the county, on said certificate of the Budget Commission and in anticipation of receiving said revenue, said revenue being in process of collection, and in order to maintain their essential governmental purposes', incurred debts and obligations. Plaintiffs further aver that there is in the possession of the Treasurer of Ohio funds collected from the said sales tax levy and credited to the county of Montgomery, but that the defendants have refused and will continue to refuse to distribute said funds so allotted to the county unless ordered by this court; that the withholding of these funds by said defendants is contrary to Section 5546-19 of the General Code of Ohio, and will prevent the local subdivisions of the county, and the county,
 
 *328
 
 from maintaining their essential services of local government
 
 ;
 
 that said defendants are without any adequate remedy at law.”
 

 The respondents filed an answer relying upon the provisions of Section 5546-20» as a defense, to which the relators demurred, attacking the constitutionality of the statute. .The sole question at issue, therefore, is the constitutionality of Section 5546-20», General Code, which reads as follows:
 

 “The Auditor of State shall not make- distribution of the local government fund as provided in Sections 5546-1 to 5546-22 of the General Code, both inclusive, to any county which is indebted or otherwise obligated to the state until such indebtedness or other obligation has been duly paid and satisfied. Provided, however, that no distribution of the local government fund as set out herein shall be withheld unless and until an itemized statement of such indebtedness is furnished the county auditor of the county from which said indebtedness is due at least thirty days prior to the withholding of said distribution. Provided, however, that any county which throug’h its' board of county commissioners shall enter into an agreement, which agreement shall be uniform for all counties as to time and percentage of payment of such indebtedness or other obligation, with the Director of Finance for the discharge of said indebtedness or other obligation over a period not to exceed ten years in duration commencing January 1, 1938, shall be entitled to receive distribution of the local government fund to which it is entitled provided its current indebtedness' or' obligation to the state is kept fully paid and any agreement entered into relative to past indebtedness or obligation is fully performed. The failure of a county to maintain payments under an agreement for installment payments as herein provided shall immediately make all remaining unpaid installments due and thereupon the Auditor
 
 *329
 
 of State shall withhold all sums distributable to s'aid county until the agreement is discharged in full. Any indebtedness or obligation of the state to a county shall :be deducted from the amount owing to the state by such county in determining the indebtedness or obligation with respect to which distribution is withheld as herein provided. Nothing herein contained shall prevent any county from discharging all or' any part of the said indebtedness or other obligations prior to the time or times designated in the said agreement. ’ ’
 

 “It is a well-established canon of construction that every reasonable presumption be indulged in favor of the constitutionality of a statute. This principle has been variously expressed. For example, it has been asserted that the courts must resolve every reasonable doubt in favor of the validity of an act; that it is their duty to construe statutes liberally, in order to save them from constitutional infirmities; and that every reasonable intendment is to be made in favor of the Legislature in enacting laws,” as stated in 8 Ohio Jurisprudence, 154
 
 et seq.,
 
 Section 58. See cases there cited, and also 6 Ruling Case Law, 78, Section 77.
 

 The relators maintain that in January, 1937, the Tax Commission of Ohio certified to the County Auditor of Montgomery county, the estimated sum of $706,165.16 to be used by the county as a local government fund; that thereafter, pursuant to Section 5546-20, General Code, the Budget Commission of Montgomery county duly apportioned the estimated amount, certified to it by the Tax Commission of Ohio, according to the needs among the several subdivisions of the county, and that thereafter, pursuant to law, the several subdivisions of the county, in anticipation of receiving the revenue, incurred certain debts and obligations. The claim is further made that unless the respondents are ordered to pay to Montgomery county the amounts due them, the local subdivisions, as well
 
 *330
 
 as the county, will be unable to maintain their essential services of local government and that they are without any adequate remedy at law.
 

 Subject to the limitations of the Constitution, the Legislature has a wide discretion in respect to taxation. This is especially true in regard to excise taxes. In the early history of the state the principal subject and source of taxation was land, but at present the state, as such, is supported principally from excise taxes. In addition thereto, the state now collects millions of dollars in excise taxes, the major portion of which is distributed to the counties for local purposes. The sales tax was first enacted in December, 1934, and has since been amended in various forms. The relators contend that Section 5546-20a is an original tax law and as such is in violation of Section 5 of Article XII of the Constitution, which reads as follows':
 

 “No tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied.”
 

 It is urged by the relators that Section 5546-20a, effective June 24, 1937, applied that amount of the sales tax certified by the estimate of the Tax Commission of Ohio to an entirely different purpose from that originally intended by the Retail Sales’ Tax Act.
 

 There are two factors that are determinative of the immediate question. One is that the statute in question was in effect prior to December 1, 1937, and the second is that it may operate only prospectively. The Retail Sales Tax Act provides for a tax on certain sales and the tax becomes effective at the time that each taxable retail sale is made. Section 5546-2, General Code, provides in part: “An excise tax is hereby levied on each retail sale made in this state of tangible personal property * * *.” The vendor is required to
 
 *331
 
 purchase the sales tax stamps before the sales are made. The revenue is collected in advance of the time of the incidence of the tax. To state the process in still another manner, the amount collected by the state of Ohio on December 1, 1937, by reason of the Retail Sales Tax Act, is a revenue on tax levies thereafter effected.
 

 In the instant case, we are concerned with the revenue of the state derived from the retail sales tax which was received in the month of December, 1937, and which was withheld in accordance with Section 5546-20a, General Code, on or about the first day of January, 1938. These amounts represent the receipts taken in during the month of December. The levies of the taxes with which we are here concerned were not made until after the enactment of Section 5546-20a, General Code. The Genéral Assembly had the power to repeal the Retail Sales' Tax Act at any time. If it could repeal, it could also amend. By amendment it could increase or decrease the rate or divert the fund to a new purpose'.
 

 “No governmental subdivision of the state has any vested right, at least until distribution is made, in any taxes levied and in the process of collection. Until such distribution is made the Legislature of Ohio is fully competent to divert the proceeds among those local subdivisions as it deems best to meet the emergencies which it finds to exist. So far as any political subdivision of the state is' concerned there can be no vested right, although a case might arise where private interests might intervene and be so affected as to give rise to a vested interest.”
 
 City of Cleveland
 
 v.
 
 Zangerle, County Aud.,
 
 127 Ohio St., 91, at page 92, 186 N. E., 805. It is apparent, therefore, that since the taxes in question were levied and collected at a time much later than the effective date of the statute, the
 
 *332
 
 law is not in violation of Section 5, Article XII, of the Constitution.
 

 It is urged by the relators that the statute under consideration in its operation constitutes a denial of the due process provision of the Constitution. It is contended that the
 
 determination
 
 of the amount of money due the state from a county is a judicial process; that to confer the power to compute or determine that amount is delegating judicial power on the Auditor of State contrary to the Constitution. But there are other officials in county and state, who are required to make similar computations. County auditors are required to make computations and determine amounts of taxes and other obligations. The budget commission of each county must constantly make computations and determine relative amounts for various political subdivisions. Many other examples of the same nature could be cited. It is not a denial of due process to determine by computation the amount of money due from one political subdivision to another. That is constantly being done by the state in respect to the distribution of funds from various excise taxes to various counties, ■ and the counties in turn act as- distributors' to other local subdivisions.
 

 “The Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government.”
 
 Locke’s Appeal,
 
 72 Pa., 491, 498, 13 Am. Rep., 716. See also
 
 Field
 
 v.
 
 Clark,
 
 143 U. S., 649, 36 L. Ed., 294, 12 S. Ct., 495.
 

 The claim is made that the statute violates the equal protection clause of the Constitution. The statute is concerned with the adjustment of accounts between the counties and the state. The statute treats each county alike. If one county has paid its obligations
 
 *333
 
 to the state and another has not, that is not the fault of the statute hut of the counties themselves. The statute does not act retrospectively. Nor is it inequitable. The state treasury can only be kept in balance if obligations are paid when due. While the state is sovereign and paramount in respect to taxation, by this statute it is not exacting from the' counties any rule of conduct not applicable to itself. It demands that as it distributes funds to the counties', pursuant to certain statutes, the counties shall meet their obligations to the state in like manner. It is said by the relators that if 'the state has any claim against the county it may go into a court of competent jurisdiction and there secure judgment. The same argument applies' to the claim of the relators. If the Auditor of State or other official makes an error the courts are open for a proper correction. On this subject, however, no claim is made by the relators that the amount stated to be due the state from Montgomery county is not correct.
 

 The statute specifically provides that the Auditor of State shall give thirty days’ notice to the county, containing an itemized account of the county’s indebtedness to the state, before any of the funds from the sales tax may be withheld. The statute does not take any one’s property without due process of law nor does it deny any one the equal protection of the laws. See
 
 State, ex rel. Poe et al.,
 
 v.
 
 Jones, And.,
 
 51 Ohio St., 492, 37 N. E., 945, and
 
 Taylor, Aud.,
 
 v.
 
 Crawford,
 
 72 Ohio St., 560, 74 N. E., 1065, 69 L. R. A., 805.
 

 It is specifically claimed that by this statute the General Assembly attempted to delegate judicial powers upon the Auditor of State and the Director of Finance of the state of Ohio. Are the duties of these officials, as set forth in the statute, judicial or administrative? The statute requires that no distribution of
 
 *334
 
 certain sales tax funds, shall be made until certain other debts due the state from the county are paid. Two things are involved; computation of the accounts and the withholding. In respect to the computation or determination of amounts, such duties are not unlike other duties of these officials. They are the keepers of the accounts of the state. Such duties come peculiarly within the province of their offices. In the adjustment of other accounts of the state, they are required to scrutinize such accounts and determine amounts due one way or another. Such services are not judicial but administrative. See
 
 Hammond, County Treas.,
 
 v.
 
 Winder, Recr.,
 
 100 Ohio St., 433, 126 N. E., 409, 24 A. L. R., 318. Also
 
 State Railroad Tax Cases,
 
 92 U. S., 575, 23 L. Ed., 663.
 

 Is the “withholding” a judicial function or process? The statute merely provides that the funds' shall be withheld‘until certain other obligations are met. Unless the condition imposed be contrary to the provisions of the Constitution, the statute will not be deemed invalid.
 
 Fassig
 
 v.
 
 State, ex rel. Turner,
 
 95 Ohio St., 232, 116 N. E., 104. The Constitution not only confers law making power on the General Assembly but recognizes' the county as a constitutional subdivision of the state. It thereby recognizes the need of correlating the relations of the counties with the state in such manner that government may operate efficiently. The statute under consideration points in that direction. It directs that in respect to the subjects involved the accounts of the state and the county shall be balanced in the manner designated — that the obligations of the state shall be met and that the debts of the counties shall likewise be liquidated. Is there anything inequitable or in violation of the Constitution in such an arrangement? Instead of inequality it seeks to promote equality in that each
 
 *335
 
 county shall meet its just obligations for the care of its unfortunate wards' and thereby contribute its share toward balancing the .state treasury with its budgetary requirements.
 

 In cause No. 26864 the demurrer to the answer will be overruled and the writ denied.
 

 In cause No. 26848 the writ will be allowed.
 

 Demurrer overruled and writ denied in cause No. 26864. Writ allowed in cause No. 26848.
 

 Weygandt, C. J., Matthias, Day, Zimmerman, Williams and Gorman, JJ., concur.