**YOUNGSTOWN (City), Plaintiff v. MITCHELL, Defendant.**

Common Pleas Court, Mahoning County.

No. 116221.   Decided December 23, 1943.

John A. Willo, Youngstown; James W. Cannon, Youngstown, and Peter B. Betras, amicus curiae, Youngstown, for plaintiff.

Homer E. Carlyle, Youngstown, I. Freeman, Youngstown, and Clyde W. Osborne, Youngstown, for defendant.

## OPINION

By MAIDEN, J.

It is to be noted at the outset that whether the construction of the improvement be done by special assessment or be done by general taxation, in so far as the expediency of making the improvement is concerned, is a matter entirely within the legislative power of the council. The sole question before this court is whether the council has the power, and whether it should exercise that power in any situation is a matter solely for the legislative discretion of the legislative body. Whether a thing be for the best interest of one group of citizens or another is immaterial in a judicial inquiry involving the sole question of the power of the legislative branch of the government.

So the first question before the court is whether there is power in the city council to proceed with the proposed improvement and the sale of the bonds, which bonds are to be paid for out of general taxation. I approach this question first entirely aside from the charter provisions. Does council have that power under the Constitution of Ohio and the statutes of the state? **Section 5625-3 GC**, reads as follows, so far as pertinent to this action:

"The taxing authority of each sub-division is hereby authorized to levy taxes annually, subject to the limitation and restrictions of this act, on the real and personal property within the sub-division for the purpose of paying the current operating expenses of the sub-division **and the acquisition or construction of permanent improvements.** The taxing authority of each sub-division and taxing unit shall * * * levy such taxes annually as are necessary to pay the interest and sinking fund on and retire at maturity the bonds * * * of such sub-division * * *."

**Section 5625-6 GC**, reads as follows, so far as pertinent to this case:

"The following special levies are hereby authorized without vote of the people. (A) For any specific permanent improvement which the sub-division is authorzied by law to acquire, construct or improve, or any class of such improvements which could be included in a single bond issue."

Section 5625-10 GC, reads as follows, so far as pertinent here:

"All revenue derived from a special levy shall be credited to a special fund for the purpose for which the levy was made. * * *

All proceeds from the sale of a bond, note or certificate of indebtedness issued except premium and accrued interest shall be paid into the special fund for the purpose of such issue."

So here we have direct authority to the municipal council to make a tax levy for the purpose of construction of permanent improvements and the proceeds from that tax levy, by virtue of those statutes, go into a fund directly to be used for the retirement of the bonds authorized for the construction of the improvement.

I find nowhere in the constitution or the statutes a restriction upon the power of a municipal council in this respect. In §11 of Art. XVIII, Constitution of Ohio, we find this language:

"Any municipality appropriating private property for a public improvement may provide money therefor in part by assessments upon benefited property not in excess of the special benefits conferred upon such property by the improvements."

It is to be noted that the word is "May"; it is entirely permissive. We find the same permissive in §3812 GC, giving any municipal corporation the power to levy and collect special assessments:

"The council of any municipal corporation may assess upon the abutting, etc."

Section 2293-2 GC, of the Uniform Bond Act gives the taxing authority power to issue bonds of such sub-division for the purpose of acquiring or constructing any permanent improvement, and Sub-section 9 of that section provides

specifically that the widening, opening, extending or changing the line of streets falls within the class known as Class "C" as to maturity. As pointed out by counsel, these sections conferred the power to issue bonds, but do not provide the method by which the bonds will be paid, so that these sections of the Uniform Bond Act can not be considered as authorizing the action intended for, but rather that power in council rests upon the other sections above set forth.

Coming now to the provision of the city charter, Section 95 reads as follows, so far as pertinent:

"Council shall have power to provide for the construction, repair and maintenance of all things in the nature of street improvements, * * *; and shall provide for the payment of the cost of the same by levying and collecting special assessments, upon abutting, adjacent or specifically benefited property, the amount necessary to pay for such improvement."

In Section 99 appears this sentence:

"All street improvements shall be financed as provided in this charter."

Analyzing the language of these sections, it might be questioned whether these sections are intended to apply to a situation where a new street is being opened, but for the purpose of this case I take the other construction that these sections mandatorily require that the constructing and approving of land for a street can only be done by the special assessment plan. So that the question then comes whether in the conflict between this charter provision and the statutes, the statutes are or are not to prevail.

Section 4676-1 GC reads as follows, so far as pertinent:

"Municipal corporations now or hereafter operating under a special charter adopted in accordance with the Constitution of the State of Ohio, which charter provides for or authorizes in whole or in part a method of procedure in the passage and publication of legislation, the making of improvements and the levying of assessments differing from the method prescribed by general law, may pass and publish such legislation, make such improvements and levy such assessments either under the provisions of the general law or in accordance with the procedure so provided for or authorized by such local charter."

If the words "Make such improvements" are broad enough to include the payment therefor of those improvements out of general taxes, then this statute specifically gives the city council a choice between two ways of paying for the improvement. In that event, any provision of the charter depriving council of that choice would be, in my judgment, in conflict with that statute so giving the choice. The charter would therefore be a limitation upon the operation of the general law.

If upon the other hand, this statute and the phrase above quoted be interpreted as not going far enough to cover the subject of payment for the improvement, then we encounter the principle of law laid down in **Berry v Columbus, 104 Oh St 607**, and **Osborne v Williams, 111 Oh St 400**, which, of course, deal with a conflict between a provision of the special assessment clause of the city charter involving a provision of the general statute. As we see above the legislature by §5625-3 GC, has conferred a direct power upon the city council in the construction of improvements. The basic principle of the two cases above cited is that where there is a conflict between the provision of the charter and the provision of the general law, the charter must yield.

"The power of municipalities, both to incur debts and to levy taxes may be restricted or limited by law. And a municipality, by adopting a charter, can not escape by limitations imposed thereon by general assembly." **State ex v Bish, 104 Oh St 206; Berry v City of Columbus,** cited above.

It is well settled that in the construction, improvement and maintenance of streets, the municipality is an agency of the state and any powers which it exercises fall within the police power of the state.

As state in Osborne v Williams at page 401:

"In the instant case there is a clear conflict between certain provisions of the charter of the city of Youngstown, relating to the procedure for improvement of streets, and the provisions of the General Code, relating to the same subject. It was decided in the Berry case that the charter provisions must yield to the statutes. In the interest of greater stability, and feeling that it is of the utmost importance that this question should be definitely settled, so that municipalities may no longer entertain any doubt concerning the same, I have decided to concur with the majority in this case, thereby making the decision unanimous, and shall concur upon similar principles in future cases."

Considerable stress was laid during the arguments on the matter of plans, profiles and estimates as required under the special assessment statutes. It is clear that the reason for these statutes being so explicit when council operates under a special assessment plan is so that the abutting property owner may have access to detailed engineering and financial data having a bearing upon his special assessment liability.

It is therefore the conclusion of this court that the council had power to enact the ordinance providing for the payment of this bond issue out of general taxes.

Coming now to the next issue which is whether the amendment of the original ordinance fixing the amount of bonds to be sold in the amount of $136,000 vitiates the form of proceeding and requires a new advertisement and the retaking of bids: It is my conclusion that it does not and that the sale of the bonds to the highest bidder who has accepted the reduced figure is a valid sale. It is entirely clear that the municipality is not placed under any disadvantage and will suffer no loss by this procedure. The testimony is clear that the pro-rating of the premium to the reduced amount in exact proportion is perhaps a better deal than the city could get upon an original offer of such a reduced amount. In legal effect, what happens is that the buyer who bids on the original amount purchases the reduced amount under the provision of §2293-29 GC. But if that construction is not correct, the original ordinance providing for the issue of $200,000 is not a void ordinance; it is perfectly valid to the extent of $136,000. (33 O. Jur., p. 83 and p. 119). If it were otherwise, the law would not be as set forth in these two pages of Ohio Jurisprudence. Also see **Batakin v Crilly, 7 O. C. C. (N. S.) 341.**

On the issue of the present amount of bonding power available, the court is unable, from the evidence, to find the bonding power to be in any amount less than $136,000; and therefore finds that amount to be valid.

Any doubt as to the power of the legislative body if the matter be one of doubt, must be resolved in favor of the legislative body. The judicial branch of the government must always give weight to a presumption of the validity of the legislative acts until the contrary be shown.

The court desires to express his appreciation to all counsel for the very, very great help which they have given and for the conscientious manner in which they have worked diligently to present all the facts and all the law; and this in-

cludes the amicus curiae who aided materially in the search of the principles of law applicable. This is the only instance in the law where the law director of the municipality finds himself in the position where he and his staff are required to be on opposite sides of a legal question. However, that is the procedure which the legislation has laid down and the only procedure available. That duty devolving upon the law director and his staff has been scrupulously and carefully carried out. All possible fact and law that would be of any help to the court has been freely and conscientiously provided.

The temporary injunction heretofore granted is dissolved and a decree is entered to the defendant; counsel to furnish journal entry.

### JOURNAL ENTRY

No. 116220.  Decided December 24, 1943.

This day this cause came on to be heard on the issues made up by the amended petition of the plaintiff and the answer of the defendant. The court being fully advised in the premises finds that the averments of the amended petition are not sustained by evidence.

The court finds that the legislation including the resolution of necessity No. 45736 passed in council on November 15th, 1943, and the Ordinance No. 45741 authorizing the issuance of two hundred thousand ($200,000) dollars of bonds of the city of Youngstown, for the opening and extension of Chestnut Street to West Front Street, were duly and legally passed.

The court further finds that on the 17th day of December, 1943, said Ordinance No. 45741 was duly amended by Ordinance No. 45774, reducing the amount of the bonds to be issued to the sum of one hundred thirty-six thousand dollars ($136,000) instead of the issue authorized in the amount of $200,000 in original Ordinance No. 45741, and that the passage of the amended Ordinance No. 45774 was legal and regular in all respects.

The court further finds that advertisement was made in accordance with law for the sale by competitive bidding of bonds in the amount of $200,000 as authorized in the original Ordinance No. 45741, and that bids were duly received and were opened at 12:00 o'clock noon on the date of December 11th, 1943, being the time specified in said advertisement.

The court further finds that no award or sale has yet

been made by the city of Youngstown to any of said bidders, but finds that the highest bidder has agreed to purchase and pay for the issue of bonds in the amount of $136,000 on the same basis and proportion and with the same interest rate as was bid for the proposed issue of $200,000 of bonds for said purpose. And the court finds that there was no legal necessity for the readvertisement for the sale of bonds for competitive bidding by reason of the passage of amended Ordinance No. 45774, or because of the reduction of the amount of the issue of said bonds from $200,000 to $136,000.

The court finds that the issue of said bonds in the amount of $136,000 for the extension and improvement of Chestnut Street from Boardman Street to Front Street is legal in all respects, and that said bonds may be sold and delivered by said city of Youngstown and its duly authorized officers.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the temporary injunction heretofore granted be, and hereby is dissolved; that the prayer of the amended petition of the plaintiff be, and hereby is denied, and that said amended petition is dismissed at the costs of the plaintiff. This judgment and decree is hereby accepted by both parties as final judgment, and right of appeal is waived by all parties hereto.

E. MAIDEN, Jr.,
Common Pleas Judge.
12/24/43

Approved:
John A. Willo,
Attorney for Plaintiff.
Clyde W. Osborne,
Attorney for Defendant.