CITY OF CLEVELAND

v.

JOHNSON.

2005-Ohio-1638.]

Cleveland Municipal Court,
Cuyahoga County, Ohio.

No. 2004 CRB 020778.

Decided Feb. 25, 2005.

18

Anthony Jordan, Chief Prosecutor for the city of Cleveland, and Victor R. Perez, Assistant Prosecutor, for plaintiff.

Harvey McGowan, for defendant.

EMANUELLA GROVES, Judge.

{¶ 1} On July 10, 2004, the defendant, Marion Johnson, was charged with violations of Cleveland Codified Ordinances 604.03(b), "Control of Vicious and Dangerous Dogs," [1] and 604.4, "Insurance; Signs; Notification." [2] The defendant

---

1. {¶ a} Section 604.03 provides:

{¶ b} "(b) While the dog is off the premises of the owner, keeper, or harborer, keep it on a substantial collar and leash or tether not exceeding six feet in length and additionally shall do the following:

{¶ c} "(1) Keep the dog in a locked pen which has a top locked fenced yard of at least six (6) feet high, or other locked enclosure which has a top; or

{¶ d} "(2) Have the leash or tether controlled by a person who is at least eighteen (18) years of age or securely attach, tie, or affix the leash or tether to the ground or a stationary object or fixture so that the dog is adequately restrained and station such person in close enough proximity to the dog so as to prevent it from causing injury to any person; and

{¶ e} "(3) Muzzle the dog. The muzzle must be made in a manner that will not cause injury to the dog or interfere with its vision or respiration but must prevent it from biting any person or animal."

2. {¶ a} Section 604.04 provides:

{¶ b} "(a) All owners, keepers or harborers of vicious dogs shall obtain a policy of liability insurance with an insurer authorized to write liability insurance in this state providing coverage in each occurrence, subject to a limit, exclusive of interest and costs, of not less than one hundred thousand dollars ($100,000.00) because of damage or bodily to or death of a person caused by the vicious dog. All owners, keepers, harborers of vicious dogs shall provide a copy of the policy for liability insurance to the Animal Warden on a yearly basis.

{¶ c} "(b) All persons who presently own, keep, or harbor a vicious dog shall produce proof of liability insurance within thirty (30) days of the effective date of this section.

{¶ d} "(c) Upon request of the Dog Warden, the owner of a vicious dog shall produce proof of liability insurance forthwith. Failure to furnish proof of liability insurance may result in the impounding of the dog by the Dog Warden until such proof is furnished.

{¶ e} "(d) All owners, keepers or harborers of vicious or dangerous dogs shall have posted and displayed at each possible entrance onto the premises where the vicious or dangerous dog is kept a conspicuous sign, clearly legible, and easily readable by the public warning that there

was charged because his pit bull dog was running loose. Additionally, the defendant failed to provide proof of required insurance.

{¶ 2} The defendant filed a motion to dismiss, arguing that the ordinances are unconstitutional and violate his right to due process. The defendant cited *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, to support his argument.

{¶ 3} In *Cowan*, the Ohio Supreme Court found a similar dangerous-dog and insurance statute unconstitutional. However, a finding of unconstitutionality of a regulation does not automatically trigger a dismissal of similar charges. A review of the opinion and regulation must be undertaken to determine its applicability to the case in question.

{¶ 4} In *Cowan*, a deputy dog warden designated Cowan's dogs vicious because of a dog-bite incident. As a result of the designation, certain responsibilities were imposed, including securing and insuring the dogs. As a result of Cowan's failure to comply with the responsibilities, she was charged with and convicted of failing to confine a vicious dog and failing to obtain the required liability insurance for a vicious dog. Cowan challenged the statute because she had no opportunity to be heard regarding the labeling of her dog as vicious. The Supreme Court found that Cowan had been denied her right to due process in the labeling of her dogs and declared the statute unconstitutional.

---

is a vicious dog on the premises. Such sign shall be at least eight (8) inches by ten (10) inches in rectangular dimensions and shall contain on the words 'Vicious Dog' or 'Dangerous Dog' in lettering not less than two (2) inches in height. Such sign should also include a visual symbol for any children or people who cannot read words.

{¶ f} "(e)(1) The owner of a vicious or dangerous dog shall notify the animal warden within twenty-four (24) hours if the vicious or dangerous dog is on the loose, is unconfined, has attacked another animal, has attacked any person, has died, or transfer ownership or possession of the dog has occurred.

{¶ g} "(2) If there has been a transfer of possession or ownership of a dangerous or vicious dog, within ten (10) days after such transfer of ownership or possession, the seller, transferor, owner, keeper, or harborer shall provide a completed copy of a written form to the animal warden on which the seller, transferor, owner, keeper, or harborer shall furnish the following information:

{¶ h} "(A) The name and address of the buyer or other transferee of the dog:

{¶ i} "(B) The age, sex, color, breed, and registration number of the dog.

{¶ j} "(C) In addition, the seller, transferor, owner, keeper, or harborer shall answer the following questions which shall be specifically stated on the form as follows:

{¶ k} " 'Has the dog ever chased or attempted to attack or bite a person? If yes, describe the incident(s) in which the behavior occurred.'

{¶ l} " 'Has the dog ever bitten a person? If yes, describe the incident(s) in which the behavior occurred.'

{¶ m} " 'Has the dog ever seriously injured or killed a person or other animal? If yes describe the incident(s) in which the behavior occurred.'

{¶ n} "The animal warden shall furnish the form to the seller or transferor at no cost."

{¶ 5} As in the statute in *Cowan* and Cleveland Codified Ordinance 604.01(k),[3] the designation of a vicious dog may occur under numerous conditions. In *Cowan*, the specific behavior of the dogs caused the designation as vicious by the dog warden. In the present case, the dog has been designated vicious because it belongs to a breed that is commonly known as a pit bull dog. Cleveland Codified Ordinance 604.01(k)(3).

{¶ 6} It is well established that, where possible, a regulation that is declared unconstitutional should not necessarily be invalidated in its entirety. "If any provision of a section of the Revised Code * * * is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable." R.C. 1.50. Therefore, the question becomes whether a unilateral designation of viciousness due to alleged behavior, which has been declared unconstitutional, is severable from a designation of viciousness due to the breed of a dog.

{¶ 7} A regulation cannot be severed if severability fundamentally disrupts the statutory scheme of which the unconstitutional provision is a part. *State ex rel. Maurer v. Sheward* (1994), 71 Ohio St.3d 513, 523, 644 N.E.2d 369; *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 464, 668 N.E.2d 457. The Ohio Supreme Court set forth the test for determining the severability of a statute in *Geiger v. Geiger* (1927), 117 Ohio St. 451, 466, 160 N.E. 28:

"(1) Are the constitutional and unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and give effect to the former only?"

Quoting *State v. Bickford* (1913), 28 N.D. 36, 147 N.W. 407, paragraph 19 of the syllabus. See, also, *Hochhausler*, 76 Ohio St.3d at 464, 465, 668 N.E.2d 457.

---

3. {¶ a} Section 604.01 provides:

{¶ b} "(K) 'Vicious dog' means a dog that, without provocation, meets any of the following:

{¶ c} "(1) Has killed or caused serious injury to any person;

{¶ d} "(2) Has caused injury, other than killing or serious injury, to any person, or has killed or caused serious injury to any domestic animal;

{¶ e} "(3) Belongs to a breed that is commonly known as a 'pit bull' dog, the ownership, keeping, or harboring of such a breed of dog shall be prima facie evidence of the ownership, keeping, or harboring of a vicious dog.

{¶ f} "(4) Is owned, kept or harbored primarily or in part for the purpose of dog fighting or any dog trained for dog fighting."

■ {¶ 8} The ordinances in question specify separate and distinct conditions under which a dog may be designated as vicious. No conditions are related to the others. The intent of the legislature was to identify different circumstances under which dogs should be designated vicious. No words or terms are necessary to give effect to the designation of dogs commonly known as pit bulls. Consequently, there is no fundamental disruption of the statutory scheme by the behavior condition being separated from the breed condition. *Maurer.*

■ {¶ 9} Now that conditions for designation as vicious are severed, the question becomes whether a unilateral designation of a breed of dog as vicious denies the right to due process. The United States Supreme Court held more than a century ago that legislators may permit dogs to be destroyed or otherwise regulated for the safety and protection of citizens. *Sentell v. New Orleans & Carrollton RR. Co.* (1897), 166 U.S. 698, 17 S.Ct. 693, 41 L.Ed. 1169; see, also, *Nicchia v. New York* (1920), 254 U.S. 228, 41 S.Ct. 103, 65 L.Ed. 235; *Downing v. Cook* (1982), 69 Ohio St.2d 149, 23 O.O.3d 186, 431 N.E.2d 995; *Akron v. Tipton* (1989), 53 Ohio Misc.2d 18, 19, 559 N.E.2d 1385. In *Tipton*, the Akron Municipal Court wrote extensively on the characteristics of pit bulls. The court found:

Pit bulls have strength and speed far beyond those of other dogs of their size, and they have great courage and tenacity. * * *

* * * The pit bull dog or pit bull terrier dog does have a personality not normally found in other dogs. This includes the capacity to change from being docile to extreme aggression toward other animals and humans. This may occur within seconds and without warning. Pit bull terriers do not normally growl or snarl before attacking. Unlike most other dogs, pit bull terriers are known to have the capacity to continue an attack until forced to stop. Once aroused, pit bull terriers will not normally back off from a fight and often continue the combat even after accumulating serious injuries, and have been known to fight to their deaths. A pit bull terrier has great strength in its body and can maintain its hold while tearing its prey with great force. These dogs have a unique fighting ability which can cause very serious injury or death.

■ {¶ 10} Under Ohio law, "all legislative enactments must be afforded a strong presumption of constitutionality." *State v. Knight* (2000), 140 Ohio App.3d 797, 810, 749 N.E.2d 761; see, also, *State v. Anderson* (1991), 57 Ohio St.3d 168, 566 N.E.2d 1224. In order for a court to declare a statute unconstitutional, it must appear beyond a reasonable doubt that the statute is incompatible with a particular constitutional provision. *State v. Cook* (1998), 83 Ohio St.3d 404, 409, 700 N.E.2d 570. One who challenges a statute must establish that no set of circumstances exists under which the statute would be valid. *State v. Coleman* (1997), 124 Ohio App.3d 78, 80, 705 N.E.2d 419, citing *United States v. Salerno* (1987), 481 U.S. 739, 749, 107 S.Ct. 2095, 95 L.Ed.2d 697.

{¶ 11} It is a "'well-settled principle of statutory construction that where constitutional questions are raised, courts will liberally construe a statute to save it from constitutional infirmities.'" *Woods v. Telb* (2000), 89 Ohio St.3d 504, 516–517, 733 N.E.2d 1103, quoting *State v. Sinito* (1975), 43 Ohio St.2d 98, 101, 72 O.O.2d 54, 330 N.E.2d 896, citing *State ex rel. Prospect Hosp. v. Ferguson* (1938), 133 Ohio St. 325, 10 O.O. 493, 13 N.E.2d 723. See, also, *Wilson v. Kennedy* (1949), 151 Ohio St. 485, 39 O.O. 301, 86 N.E.2d 722. Furthermore, R.C. 1.47 provides, "In enacting a statute, it is presumed that * * * [c]ompliance with the constitutions of the state and of the United States is intended * * *." See, also, *State v. Tanner* (1984), 15 Ohio St.3d 1, 2, 15 OBR 1, 472 N.E.2d 689. Generally, a "'legislative enactment will be deemed valid on due process grounds "* * * [1] if it bears a real and substantial relation to public health, safety, morals or general welfare of the public and [2] if it is not unreasonable or arbitrary."'" *Mayer v. Bristow* (2000), 91 Ohio St.3d 3, 13, 740 N.E.2d 656, quoting *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 274, 28 OBR 346, 503 N.E.2d 717, quoting *Benjamin v. Columbus* (1957), 167 Ohio St. 103, 4 O.O.2d 113, 146 N.E.2d 854. See, also, *Morris v. Savoy* (1991), 61 Ohio St.3d 684, 688–689, 576 N.E.2d 765.

{¶ 12} The Ohio Constitution authorizes cities "to exercise all powers of local self-government" and to adopt and enforce within their limits local police, sanitary, and other similar regulations that do not conflict with the general laws of the state. Section 3, Article XVIII, Constitution; *Youngstown v. Craver* (1933), 127 Ohio St. 195, 187 N.E. 715. Cities are authorized by statute to prevent riot, noise, and disturbances and to preserve peace and good order. R.C. 715.49. Any doubt as to the legislative power of a city council must be resolved in favor of that body. *Youngstown v. Mitchell* (1943), 30 O.O. 122. A city ordinance is presumed constitutional when it has a substantial relationship to the public peace, health, safety, or welfare and is not arbitrary, discriminatory, capricious, or unreasonable. *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163; *Geauga Cty. Bd. of Commrs. v. Munn Rd. Sand & Gravel* (1993), 67 Ohio St.3d 579, 621 N.E.2d 696; *Akron v. Holley* (1989), 53 Ohio Misc.2d 4, 557 N.E.2d 861. The ordinance must be reasonably designed to accomplish a purpose falling within the scope of the police power. *Springfield v. Hurst* (App.1943), 41 Ohio Law Abs. 129, 57 N.E.2d 425, affirmed (1944), 144 Ohio St. 49, 28 O.O. 569, 56 N.E.2d 185. See, also, *Feldman v. Cincinnati* (S.D.Ohio 1937), 20 F.Supp. 531.

{¶ 13} The government may lawfully consider both the public interest and private rights and strike an appropriate balance between the two. *Penn Cent. Transp. Co. v. New York City* (1978), 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631; *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 667 N.E.2d 8; *Direct*

*Plumbing Supply Co. v. Dayton* (1941), 138 Ohio St. 540, 21 O.O. 422, 38 N.E.2d 70.

{¶ 14} Given the inherently dangerous nature of pit bulls and the proper and reasonable exercise of Cleveland's police powers in adopting the ordinances at issue, the defendant has not been denied his right of due process. Unlike the dogs in *Cowan,* a pit bull dog is clearly vicious by its nature. It would be unreasonable and against the public interest to first conduct individual hearings on the viciousness of pit bulls after an injury has been inflicted.

{¶ 15} For the reasons set forth above, the defendant's motion to dismiss is denied.

Motion denied.