**[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 504.]**

**WOODS, APPELLEE, *v*. TELB, SHERIFF, ET AL., APPELLANTS.**

**[Cite as *Woods v. Telb*, 2000-Ohio-171.]**

*Criminal procedure—Validity of R.C. 2967.28 examined—R.C. 2967.28 does not violate the separation of powers doctrine or Due Process Clauses of the United States and Ohio Constitutions—Trial court must inform defendant at sentencing or at time of plea hearing that post-release control is part of defendant's sentence—Post-release control terminates at end of applicable period set forth in R.C. 2967.28(B)—Time spent in jail as a sanction for a post-release control violation counts toward the cap in R.C. 2967.28(F)(3).*

1.  R.C. 2967.28 does not violate the separation of powers doctrine or the Due Process Clauses of the United States or Ohio Constitutions.

2.  Pursuant to R.C. 2967.28(B) and (C), a trial court must inform the defendant at sentencing or at the time of a plea hearing that post-release control is part of the defendant's sentence.

3.  Post-release control terminates at the end of the applicable period set forth in R.C. 2967.28(B).

4.  For purposes of the post-release control statute, jail is the functional equivalent of prison. Therefore, time spent in jail as a sanction for a post-release control violation counts toward the cap found in R.C. 2967.28(F)(3), so the period of a prison or jail term that is imposed for a violation of post-release control shall not exceed nine months, nor shall the maximum cumulative prison or jail term for all violations of the post-release control statute exceed one-half of the stated prison term originally imposed upon the offender as part of this sentence.

(No. 99-1419—Submitted April 12, 2000 at the Geauga County Session—

Decided August 3, 2000.)

APPEAL from the Court of Appeals for Lucas County, No. L-99-1083.

_____

{¶ 1} On September 13, 1996, Milton Woods, the petitioner herein, pled guilty to theft (R.C. 2913.02[A]), a fifth-degree felony. Petitioner executed the plea form in open court which provided that, "If I receive prison for a felony 3, 4, or 5, I may be given up to 3 years of post release control. If I violate conditions of supervision while under post release control, the parole board could return me to prison for up to nine months for each violation, for a total of 50% of my originally stated term. If the violation is a new felony I could receive a new prison term of the greater of one year or the time remaining on post release control."

{¶ 2} On September 25, 1996, pursuant to the plea, petitioner was sentenced to serve ten months in prison. The sentencing entry provided: "Defendant is notified that * * * [a]fter prison release, if post-release control is imposed, for violations of post release control conditions, the adult parole authority or parole board may impose a more restrictive or longer control sanction, return defendant to prison for up to nine months for each violation, up to a maximum of 50% of the stated term. If the violation is a new felony, defendant may receive a new prison term of the greater of one year or the time remaining on post release control."

{¶ 3} Petitioner served his complete ten-month prison sentence and on June 17, 1997, the APA placed him on three years of post-release control. On June 18, 1997, petitioner reported to the Toledo District Office and signed the conditions of supervision. As part of his post-release control, petitioner was placed in a substance abuse program and ordered to submit to weekly urine screenings. In addition, he was ordered to report to the APA office monthly and to actively seek employment. When petitioner failed to attend the substance abuse program, failed to report to his post-release control officer, and failed to report for his weekly drug screening, an

arrest order was issued July 2, 1997. Petitioner was arrested on July 10, 1997, and under the terms of his post-release control, the APA imposed sanctions that petitioner attend and successfully complete a day-reporting program and that petitioner report to one of the APA's chemical dependency specialists. After petitioner tested positive for alcohol and cocaine use, the Toledo Police Department arrested him on July 22, 1997, for drug abuse, a charge that was later dismissed due to the fact that the substance found in petitioner's possession was counterfeit.

{¶ 4} As a result of the drug abuse charge, the APA held a violation hearing on August 19, 1997, and at that time, the hearing officer sanctioned petitioner to a halfway house, where he was also to become involved in a substance abuse program, attend daily Narcotics Anonymous and Alcohol Anonymous meetings, and submit to weekly urine screenings. On October 17, 1997, petitioner was arrested at the halfway house when he was suspected of a theft, but that charge was later dropped. Petitioner was successfully discharged from the halfway house on December 17, 1997, but was instructed to continue to leave weekly urine screens at the APA office.

{¶ 5} On February 18, 1998, the APA issued an arrest order and declared petitioner a parole violator at large due to his failure to report to his parole officer and failure to report for his weekly urine screen. The Toledo Police Department arrested petitioner again on March 18, 1998, for giving false information about his identity, possession of drug paraphernalia, and post-release control violations. The APA held a violation hearing on March 30, 1998 and, at that time, petitioner admitted to all violations and the hearing officer imposed a prison term of one hundred fifty-one days, which was one half of the original term of his imprisonment. On April 2, 1998, petitioner was returned to the prison. On August 28, 1998, he was released again on post-release control.

{¶ 6} On October 5, 1998, the Toledo Police Department arrested petitioner for loitering and obstructing official business. On November 4, 1998, petitioner

was released from custody and the following sanctions were imposed: that there be no more arrests; and that he gain employment, successfully complete substance abuse counseling, report for office visits twice per week, and successfully complete a halfway house program. Petitioner reported to the office on November 12, 1998, claiming that he had missed his appointment with the substance abuse counselor. At that time, he submitted to a urine screen that tested positive for cocaine. On January 16, 1999, petitioner was arrested for drug abuse, a charge for which he was later convicted and then sentenced to a community-based correctional facility for one hundred eighty days. In addition, he was charged with escape (R.C. 2921.34) in relation to his failure to report to his post-release control officer.[1] On March 7, 1999, petitioner was mistakenly released from the community-based correctional facility. On March 10, 1999, he voluntarily turned himself in to his post-release control officer.

{¶ 7} On March 18, 1999, petitioner filed a petition for writ of habeas corpus in the Sixth Appellate District against the Lucas County Sheriff's Department and the Adult Parole Authority. On March 25, 1999, the last violation hearing was held and petitioner was sentenced to thirty days in the county jail and was subject to the control and supervision of the APA.

{¶ 8} The Sixth District held a hearing on the petition on April 6, 1999, and discharged petitioner from custody pending the decision of the court. On June 23, 1999, the Sixth District held that R.C. 2967.28 is unconstitutional in that it violates both the separation of powers doctrine and the Due Process Clauses of the United States and Ohio Constitutions. Accordingly, the Sixth District granted habeas corpus relief to the petitioner and released him from the control and supervision of the Ohio Adult Parole Authority. On August 3, 1999, the court of appeals granted a motion for stay of judgment pending appeal.

---

1. At the time of his hearing on the petition for a writ of habeas corpus, petitioner's felony escape charge was still pending.

{¶ 9} The cause is now before this court upon an appeal as of right.

_____

*Jon D. Richardson*, for appellee.

*Julia R. Bates,* Lucas County Prosecuting Attorney, *John J. Weglian*, *Brenda J. Majdalani* and *Eric A. Baum*, Assistant Prosecuting Attorneys, for appellant Lucas County Sheriff James A. Telb.

*Betty D. Montgomery*, Attorney General, *David M. Gormley*, Associate Solicitor, and *M. Scott Criss*, Assistant Attorney General, for appellants Parole Officer Eddie Hopkins and Ohio Adult Parole Authority.

_____

**LUNDBERG STRATTON, J.**

{¶ 10} Today we examine the validity of R.C. 2967.28, Ohio's post-release control statute. The court of appeals held that the statute was unconstitutional in that it violated the separation of powers doctrine and the Due Process Clauses of the United States and Ohio Constitutions. For the following reasons, we reverse the judgment of the court of appeals.

I

HISTORY & OVERVIEW

{¶ 11} In 1990, the General Assembly enacted legislation authorizing the creation of the Ohio Criminal Sentencing Commission and instructed it to develop and recommend to the General Assembly a comprehensive criminal sentencing structure. R.C. 181.21; 181.23. This sentencing policy was to be designed "to enhance public safety by achieving certainty in sentencing, deterrence, and a reasonable use of correctional facilities, programs, and services, and shall be designed to achieve fairness in sentencing." R.C. 181.23(B).

{¶ 12} Further, the enabling legislation provided that "[t]he sentencing structure shall be designed to enhance public safety, to assist in the management of prison overcrowding and correctional resources, to simplify the sentencing

5

structure of the state that is in existence on August 22, 1990, and to result in a new sentencing structure that is readily understandable by the citizens of the state, to simplify the criminal code of the state, to assure proportionality, uniformity, and other fairness in criminal sentencing, and to provide increased certainty in criminal sentencing." R.C. 181.24(A).

{¶ 13} As part of the Sentencing Commission's recommendations, the first comprehensive revision of Ohio's Criminal Code since 1974, Am.Sub.S.B. No. 2 ("SB 2"), and its companion bill, Am.Sub.S.B. No. 269 ("SB 269"), took effect on July 1, 1996, thoroughly altering the definitions of criminal offenses, as well as changing the landscape of Ohio's sentencing system. Under the above-mentioned order of providing more certainty in criminal sentencing, one of the overriding goals of SB 2 was "truth in sentencing," meaning that the sentence imposed by the judge is the sentence that is served, unless altered by the judge. This was primarily accomplished by two methods: eliminating indefinite sentences and eliminating parole.

{¶ 14} Pre-SB 2, an offender rarely served the time actually sentenced for three main reasons. First, indefinite sentences were prescribed for most serious felonies. Second, upon entering a state correctional institution, an offender's sentence was "automatically" reduced by thirty percent for good behavior. Former R.C. 2967.19, 145 Ohio Laws, Part IV, 6437. Finally, the Ohio Parole Board ("APA" herein) reviewed all prison sentences for disparity among offenders and attempted to abate inequities. Former R.C. 2967.03, 145 Ohio Laws, Part IV, 6428.

{¶ 15} Now, under SB 2's "truth in sentencing," offenders are sentenced to definite sentences. Good time has been significantly reduced, and must be earned.[2]

---

2. Only one day per month can be subtracted from the judge's sentence for conduct in prison and, then, only for active participation in an educational program, vocational training, employment in prison industries, treatment for substance abuse, treatment as a sex offender, or any other constructive program developed by the department with specific standards for performance by prisoners. R.C. 2967.193(A).

R.C. 2967.193(A). Finally, the Parole Board no longer has the authority to determine how long an offender stays in prison. Instead of parole, however, the legislature enacted a concept known as post-release control, another hallmark of the new sentencing structure and the subject of this case.

{¶ 16} Pre-SB 2 offenders who were convicted of first- or second-degree felonies and third- and fourth-degree felonies that involved an act of violence, or who had a conviction for a prior crime of violence, were subject to post-release supervision, called parole. Now, under SB 2, a period of post-release control is required for all offenders who are imprisoned for first- or second-degree felonies, felony sex offenses, or a third-degree felony, not a felony sex offense, in which the offender caused or threatened to cause physical harm to a person. R.C. 2967.28(B). Further, post-release control is authorized for those imprisoned for other felonies at the discretion of the Parole Board. R.C. 2967.28(C).

{¶ 17} Post-release control is a "period of supervision by the adult parole authority after a prisoner's release from imprisonment that includes one or more post-release control sanctions imposed under section 2967.28 of the Revised Code." R.C. 2967.01(N). The Parole Board has significant discretion to impose conditions of release designed to protect the public and to promote the releasee's successful reintegration into the community. Ohio Adm.Code 5120:1-1-17(A).

{¶ 18} Post-release control is mandatory for first-degree felonies, second-degree felonies, felony sex offenses, and third-degree felonies that are not felony sex offenses and in the commission of which the offender caused or threatened to cause physical harm to a person. R.C. 2967.28(B). Post-release control for those convicted of first-degree felonies and felony sex offenses shall be a period of five years. R.C. 2967.28(B)(1). Post-release control for those convicted of second-degree felonies that are not felony sex offenses and third-degree felonies that are

not felony sex offenses and in the commission of which the offender caused harm to a person shall be a period of three years. R.C. 2967.28(B)(2) and (3).[3]

**{¶ 19}** R.C. 2967.28(D) sets forth the factors that the APA considers in determining whether to impose a period of post-release control for those within its discretionary control and, if so, what conditions will be made for the post-release control. In making the decision whether to impose a period of post-release control, the APA considers such things as the offender's criminal history, all juvenile court adjudications finding the offender, while a juvenile, to be a delinquent child, and the record of the offender's conduct while imprisoned. R.C. 2967.28(D). After considering those materials, the board shall determine whether a post-release control sanction is necessary and, if so, which post-release control sanction or combination of post-release control sanctions is reasonable under the circumstances. R.C. 2967.28(D).

**{¶ 20}** Post-release control does have some significant restrictions. For example, the post-release control statute provides that "[w]hen appropriate, the board may impose as a post-release control sanction a residential sanction that includes a prison term. * * * The period of a prison term that is imposed as a post-release control sanction under this division shall not exceed nine months, and *the maximum cumulative prison term for all violations under this section shall not exceed one-half of the stated prison term originally imposed upon the offender as part of this sentence. The period of a prison term that is imposed as a post-release control sanction under this division shall not count as, or be credited toward, the remaining period of post-release control.*" (Emphasis added.) R.C. 2967.28(F)(3).

II

THE CASE OF MILTON WOODS

---

3. The constitutionality of mandatory post-release control (*i.e.,* for those convicted of first or second-degree felonies, felony sex offenses, or certain third-degree felonies) was never challenged in the court of appeals.

**{¶ 21}** Milton Woods, the petitioner herein, convicted of committing theft, a fifth-degree felony, was sentenced to serve ten months in prison. The trial court informed petitioner at sentencing that the APA may place him on post-release control for three years, since petitioner's offense permitted discretionary post-release control. At the end of petitioner's sentence, the APA determined that petitioner merited post-release supervision for a period of three years.

**{¶ 22}** During that post-release control period, petitioner violated the terms of his post-release control on several occasions and the APA sanctioned him by various methods. After he failed to attend a substance abuse program, failed to report to his post-release control officer, and failed to report for his weekly urine screenings in June of 1997, he was sanctioned to a day-reporting program and ordered to report to an APA chemical dependency specialist. After an arrest for a drug charge in July of 1997, petitioner received a violation hearing and then was sanctioned to a halfway house, where he was to become involved in a substance abuse program. He was discharged from the halfway house in December, and in January 1998, he failed to report to his post-release control officer and failed to report for his weekly urine screen. In March 1998, he was arrested for possession of drug paraphernalia, giving officers false information about his identity, and a post-release control violation. After a hearing, he was sentenced to one hundred fifty-one days in prison, which was one-half of the original term of his commitment.

**{¶ 23}** After petitioner served his prison sanction, on August 28, 1998, petitioner was released again from prison under continued post-release control and on October 5, 1998, he was arrested again for loitering and obstruction. November 4, 1998, petitioner was released and sanctioned to attend substance-abuse counseling. On November 12, 1998, petitioner tested positive for cocaine. On January 16, 1999, petitioner was arrested for drug abuse and was sanctioned to serve one hundred eighty days in a community-based correctional facility. March

25, 1999, the last violation hearing was held and petitioner was sanctioned to serve thirty days in the Lucas County Jail.

{¶ 24} Petitioner filed for a writ of habeas corpus in the Court of Appeals for Lucas County. At the hearing on the petition, the sole witness was John Kinkela, the Chief of the Adult Parole Authority, who testified about the specifics of petitioner's case, his opinion as to how post-release control was intended to work, and how the APA was currently handling particular post-release control issues. Subsequent to the hearing, the court of appeals concluded that R.C. 2967.28 violates the separation of powers doctrine and the Due Process Clause of the United States and Ohio Constitutions. We disagree.

A. Separation of Powers

{¶ 25} We begin our analysis of the constitutionality of R.C. 2967.28 with the premise that "[a]n enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus; *State v. Thompkins* (1996), 75 Ohio St.3d 558, 560, 664 N.E.2d 926, 928. Further, the party challenging the statute bears the burden of proving the unconstitutionality of the statute beyond a reasonable doubt. *Thompkins, id.*

{¶ 26} In declaring the post-release control statute unconstitutional, the court of appeals found that it violated the separation of powers doctrine because the delegation of the powers associated with post-release control to the executive (APA) usurped judicial authority. In so doing, the court of appeals noted that "[t]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers." *State ex rel. Johnston v. Taulbee* (1981), 66 Ohio St.2d 417, 20 O.O.3d 361, 423 N.E.2d 80, paragraph one of the syllabus.

**{¶ 27}** In reviewing the standard cited by the court of appeals above, we find no such impediment. Instead, we deduce that the current delegation of power to the APA through post-release control is no different in terms of the separation of powers doctrine than it was under the former system of parole.

**{¶ 28}** Under the prior system of parole, a sentencing judge, imposing an indefinite sentence with the possibility of parole, had limited power or authority to control the minimum time to be served before the offender's release on parole; the judge could control the maximum length of the prison sentence, but the judge had no power over when parole might be granted in between those parameters. The judge had no power to control the conditions of parole or the length of the parole supervision.

**{¶ 29}** Under the current system of post-release control, the judge sentences the offender from the options available under the new sentencing scheme and informs the offender that he or she may be subject to a definite period of post-release control, which may last for up to three years in the case of discretionary post-release control,[4] and that a violation of those conditions would result in additional time up to fifty percent of the original sentence. Those terms are part of the actual sentence, unlike bad time, where a crime committed while incarcerated resulted in an additional sentence not imposed by the court. In other words, the court imposes the full sentence and the APA determines whether violations merited its imposition. The offender is fully informed at sentencing that violations of post-release control will result in, essentially, "time and a half."

**{¶ 30}** Although the sentencing judge has no control over the period of time an offender may serve on post-release control, nor did the sentencing judge have control over the time that an offender may have served on parole. But, we observe that for as long as parole has existed in Ohio, the executive branch (the APA and

---

4. Post-release control for those convicted of first- or second-degree felonies, felony sex offenses, or certain third-degree felonies is mandatory.

its predecessors) has had absolute discretion over that portion of an offender's sentence. See *State ex rel. Atty. Gen. v. Peters* (1885), 43 Ohio St. 629, 4 N.E. 81.

{¶ 31} We are mindful that we have recently held that Ohio's bad-time statute, R.C. 2967.11, violates the separation of powers doctrine. However, the post-release control statute is clearly distinguishable. We held that the bad-time statute was unconstitutional because the bad-time statute set up a scheme whereby the Parole Board acted "as judge, prosecutor, and jury," for an action that could be prosecuted as a felony in a court of law. *State ex rel. Bray v. Russell* (2000), 89 Ohio St.3d 132, 135, 729 N.E.2d 359, 362. While we acknowledged that prison discipline is a proper exercise of executive power, we concluded that trying, convicting, and sentencing inmates for crimes committed while in prison is *not* an appropriate exercise of executive power. *Id.,* 89 Ohio St.3d at 136, 729 N.E.2d at 362. The commission of the "crime" actually resulted in an additional sentence being imposed by an administrator. If an offense was serious enough to constitute an additional crime, and the prison authorities did not feel that administrative sanctions were sufficient (*i.e.*, isolation, loss of privileges), the prison authorities should bring additional charges in a court of law, as they did before SB 2. Accordingly, we held that R.C. 2967.11 violated the doctrine of separation of powers and is therefore unconstitutional.

{¶ 32} The court of appeals below acknowledged the similarities between parole and post-release control, but found that a significant distinction between parole and post-release control is that post-release control begins only after the offender has completed the prison term he was sentenced to in the trial court. We find this conclusion to be incorrect because, in contrast to the bad-time statute, post-release control is part of the original judicially imposed sentence. Further, the powers delegated to the executive branch (APA) are no more than were granted under the prior system of parole. Finally, there is nothing in the Parole Board's discretionary ability to impose post-release control sanctions that impedes the

judiciary's ability to impose a sentence. The post-release control sanctions are sanctions aimed at behavior modification in the attempt to reintegrate the offender safely into the community, not mere punishment for an additional crime, as in bad time.

**{¶ 33}** Accordingly, because the APA's discretion in managing post-release control does not impede the function of the judicial branch, we find no violation of the separation of powers doctrine.

**{¶ 34}** Further, we hold that pursuant to R.C. 2967.28(B) and (C), a trial court must inform the offender at sentencing or at the time of a plea hearing that post-release control is part of the offender's sentence. Because the record clearly indicates that the petitioner was advised of discretionary post-release control both in his signed plea form and in his sentencing entry, we find no violation of the separation of powers doctrine in this case.

### B. Due Process

**{¶ 35}** In addition to finding a violation of the separation of powers doctrine, the court of appeals went on to find that the petitioner had not been afforded the due process protections set forth in *Morrissey v. Brewer* (1972), 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. Even assuming that the determination of a post-release control violation was made by a neutral decision maker, the court of appeals held that the mere fact that the APA is performing the functions that were not contemplated by the trial court in its sentence denies an offender his due process rights. Again, we respectfully disagree.

**{¶ 36}** The trial court's sentence, as we have already discussed, does contemplate that the APA may choose to place the offender on post-release control, in this instance, for up to three years. As under pre-SB 2, violations of the conditions of post-release control could be administratively supervised and sanctions could be administratively dispensed. SB 2 provides similarly adequate safeguards for those administrative procedures.

**{¶ 37}** Ohio's new post-release control statute admonishes the APA to "[e]nsure procedural due process to an alleged violator." R.C. 2967.28(E)(5)(d). As codified in the Ohio Administrative Code:

"With respect to the hearing, the offender has the following rights:

"(a) The right to receive prior to the hearing a written notice setting forth the date, time and location of the hearing and the specific violations the releasee is alleged to have committed.

"(b) The right to be heard in person and present relevant witnesses and documentary evidence.

"(c) The right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation. In the event that confrontation is disallowed, specific reasons for the same shall be documented in the record of proceedings.

"(d) The right to disclosure of evidence presented against the releasee.

"(e) The right to request representation by counsel. If the releasee cannot afford to retain counsel, assistance, upon request, will be provided by the office of the state public defender.

"(f) The right to a written digest of the proceedings by the hearing officer if requested." Ohio Adm.Code 5120:1-1-43(J)[*sic*, I](2).

**{¶ 38}** There is no dispute that the APA provided petitioner with all of these procedural protections. But the court of appeals found the fact that the post-release control violation hearing is conducted by the APA, itself, was troubling. We conclude that these protections provided in the Ohio Administrative Code not only comport with those required by *Morrissey v. Brewer,* but go beyond *Morrissey* by guaranteeing the right to counsel as well.

**{¶ 39}** In *Goldberg v. Kelly* (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, the United States Supreme Court considered what process was due in the revocation of public assistance benefits. The court concluded that the fundamental

requisite of due process of law is the opportunity to be heard in a meaningful time and in a meaningful manner. *Id.*, 397 U.S. at 267, 90 S.Ct. at 1020, 25 L.Ed.2d at 299. Later, the court considered what procedural protections should be afforded those accused of parole violations. In light of *Goldberg*, *Morrissey* requires that the determination that "reasonable ground exists for revocation of parole should be made by someone not directly involved in the case." *Morrissey*, 408 U.S. at 485, 92 S.Ct. at 2602, 33 L.Ed.2d at 497.

{¶ 40} "This independent officer need not be a judicial officer. The granting and revocation of parole are matters traditionally handled by administrative officers. In *Goldberg*, the Court pointedly did not require that the hearing on termination of benefits be conducted by a judicial officer or even before the traditional 'neutral and detached' officer; it required only that the hearing be conducted by some person other than one initially dealing with the case. It will be sufficient, therefore, in the parole revocation context, if an evaluation of whether reasonable cause exists to believe that conditions of parole have been violated is made by someone such as a parole officer other than the one who has made the report of parole violations or has recommended revocation." *Morrissey*, 408 U.S. at 486, 92 S.Ct. at 2603, 33 L.Ed.2d at 497.

{¶ 41} All of petitioner's post-release control violation hearings were conducted by a neutral and detached Parole Board hearing officer. None of petitioner's violation hearings was held by his parole officer, Eddie Hopkins. *Morrissey* and *Goldberg* require no more. Accordingly, we hold that petitioner's due process rights were not violated.

III

POST-RELEASE CONTROL TIME CREDITED

{¶ 42} We have upheld the constitutionality of the post-release control statute, but two questions remain. First, what happens to a person on post-release control when he or she has been imprisoned for half of his or her originally stated

sentence as a post-release control sanction?  Second, what forms of detention count toward that time?

**{¶ 43}** R.C. 2967.28(F)(3) provides that "[w]hen appropriate, the board may impose as a post-release control sanction a residential sanction that includes a prison term. * * * The period of a prison term that is imposed as a post-release control sanction under this division shall not exceed nine months, and *the maximum cumulative prison term for all violations under this division shall not exceed one-half of the stated prison term originally imposed upon the offender as part of this sentence.  The period of a prison term that is imposed as a post-release control sanction under this division shall not count as, or be credited toward, the remaining period of post-release control."*  (Emphasis added.)

**{¶ 44}** Petitioner interprets the statute to mean that during that three-year term of post-release control, if he serves the maximum prison sanction permitted under R.C. 2967.28(F)(3), post-release control terminates.  On the contrary, the APA contends that the statute does not provide for the APA to terminate post-release control when the maximum prison term is exhausted.  The APA claims that it placed petitioner on post-release control for a period of three years and that petitioner must serve the full three years of post-release control, regardless of whether he has served his maximum prison term during that three-year period.

## A.  Termination of Post-Release Control

**{¶ 45}** The length of post-release control time is set forth in the statute: five years for first-degree or felony sex offenses, three years for second-degree offenses, three years for certain third-degree offenses, and up to three years for certain other third-degree offenses, and fourth- and fifth-degree offenses. R.C. 2967.28(B) and (C).  It belies common sense for the General Assembly to provide specific terms of post-release control, but then intend for post-release control to terminate at the end of the maximum prison term.  Instead, the maximum prison term is designed to

16

prevent the APA from using prison excessively as a sanction for post-release control violations.

**{¶ 46}** Further, R.C. 2967.28(F)(3) provides in part that the "period of a prison term that is imposed as a post-release control sanction under this division shall not count as, or be credited toward, the remaining period of post-release control." This sentence directly conflicts with the petitioner's contention that the APA may terminate post-release control upon the expiration of the available prison sanction. The General Assembly clearly intended for releasees such as petitioner to be returned to prison for violations of post-release control and then later returned to post-release control for the remainder of the post-release control period. Once that sanction has been used to the maximum extent, it is no longer available to be used as a post-release control sanction. Instead, the APA must use other available post-release control sanctions.

**{¶ 47}** Accordingly, we hold that post-release control terminates at the end of the applicable period set forth in R.C. 2967.28(B).

### B. Counting Time

**{¶ 48}** Post-release control helps ease the transition from prison to the community by continuing a relationship with the APA in an attempt to encourage the releasee to make positive lifestyle decisions. Therefore, the value in enabling the APA to choose from a continuum of post-release control sanctions is in the ability to start out with minimal sanctions for violations of post-release control, and then ratchet up those sanctions if the releasee continues to violate post-release control.

**{¶ 49}** The post-release control statute clearly provides a range of sanctions, of which prison is just one. The statute technically regards the range of residential sanctions available as separate and apart from a prison sanction. Thus, "post-release control sanction" is defined as "a sanction that is authorized under sections 2929.16 to 2929.18 of the Revised Code." R.C. 2967.01(O). Those sections do not

deal with prison terms at all, which are dealt with in R.C. 2929.14. Accordingly, R.C. 2967.28(F)(3) treats post-release control sanctions and a potential prison term as distinct entities. However, we hold that for purposes of the post-release control statute, jail is the functional equivalent of prison.

{¶ 50} As we noted above, we find that the General Assembly intended to prevent the APA from using prison excessively as a sanction for post-release control violations. As the functional equivalent of prison, we conclude that jail must be included in this cap as well. First, jail is different from the other non-prison post-release control sanctions. Jail is the only non-prison post-release control sanction that involves complete confinement of the offender. In halfway houses, day reporting, work-release, etc., the offender's liberty is not curtailed to the extent of prison and jail.

{¶ 51} Second, to hold otherwise would mean that the General Assembly would be authorizing the APA to confine a releasee such as petitioner in jail for the entire term of post-release control. Clearly this could not be what the General Assembly intended, especially in light of the Eighth Amendment implications for a releasee such as petitioner who was originally sentenced to serve a ten-month prison term and could end up serving his three-year term of post-release control incarcerated in jail.

{¶ 52} It is a "well-settled principle of statutory construction that where constitutional questions are raised, courts will liberally construe a statute to save it from constitutional infirmities." *State v. Sinito* (1975), 43 Ohio St.2d 98, 101, 72 O.O.2d 54, 56, 330 N.E.2d 896, 898, citing *State ex rel. Prospect Hosp. v. Ferguson* (1938), 133 Ohio St. 325, 10 O.O. 493, 13 N.E.2d 723; *Wilson v. Kennedy* (1949), 151 Ohio St. 485, 39 O.O. 301, 86 N.E.2d 722. Further, R.C. 1.47 provides: "In enacting a statute, it is presumed that: (A) Compliance with the constitutions of the state and of the United States is intended * * *."

{¶ 53} Because we hold that for purposes of the post-release control statute, jail is the functional equivalent of prison, time spent in jail as a sanction for a post-release control violation counts toward the cap found in R.C. 2967.28(F)(3), so the period of a prison or jail term that is imposed for a violation of post-release control shall not exceed nine months, nor shall the maximum cumulative prison or jail term for all violations of the post-release control statute exceed one-half of the stated prison term originally imposed upon the offender as part of this sentence. Although other post-release control sanctions may be available, once the cap on the prison/jail sanction is reached, prison/jail is no longer a post-release control sanction option.

{¶ 54} Petitioner's period of post-release control commenced on June 17, 1997, when he completed his prison sentence and was released. As a post-release control sanction, petitioner was returned to prison and served one-half of his stated prison term originally imposed (five months). After his release from his prison sanction, he was ordered to serve various forms of non-prison confinement. Later, however, petitioner was returned to jail, where he was confined at the time he filed his petition for a writ of habeas corpus.

{¶ 55} The court of appeals released petitioner from the control and supervision of the APA on June 23, 1999, at the time it granted petitioner's writ of habeas corpus. The court later issued a stay of its decision on August 3, 1999. Because the judgment of the court of appeals was stayed, it appears, but is unclear from the record, that the petitioner was returned to post-release control at that time.

{¶ 56} Pursuant to R.C. 2967.28(F)(3), the period of a prison/jail term that is imposed as a post-release control sanction under this division shall not count as, or be credited toward, the remaining period of post-release control. Accordingly, we affirm that portion of the court of appeals' opinion granting the petitioner's habeas corpus petition because the APA had exceeded the prison/jail sanction. We reverse that portion of the opinion finding R.C. 2967.28 to be unconstitutional.

Finally, we remand the cause to the court of appeals for further proceedings consistent with our opinion. Specifically, we order that the court of appeals review the record and calculate the ending date of petitioner's period of post-release control.

*Judgment accordingly.*

MOYER, C.J., and F.E. SWEENEY, J., concur.

PFEIFER, J., concurs in the syllabus and judgment.

WHITMORE and COOK, JJ., concur in judgment.

DOUGLAS, J., dissents.

BETH WHITMORE, J., of the Ninth Appellate District, sitting for RESNICK, J.

_____

**COOK, J., concurring in judgment.**

{¶ 57} I dissented from this court's recent decision that R.C. Chapter 2967's "bad time" provisions violate the separation of powers doctrine. See *State ex rel. Bray v. Russell* (2000), 89 Ohio St.3d 132, 136, 729 N.E.2d 359, 362 (Cook, J., dissenting). Today, in Part II(A) of its opinion, the majority decides that R.C. 2967.28's post-release control provisions are "clearly distinguishable" from bad time for purposes of a separation-of-powers analysis. Though I agree with the majority that R.C. 2967.28 does not violate the separation of powers doctrine, I would not support that conclusion, as the majority does, by *distinguishing* post-release control from bad time.

{¶ 58} The majority decides that "in contrast to the bad-time statute, post-release control is part of the original judicially imposed sentence." No such contrast exists, for as I indicated in *Bray,* the General Assembly provided that any bad-time extension of a prisoner's sentence would occur only "[a]s part of" the offender's original judicially-imposed sentence. *Bray,* 89 Ohio St.3d at 138, 729 N.E.2d at 364, quoting R.C. 2967.11(B). The majority also supports today's decision by noting that the sentencing court informs offenders of the consequences that may

20

result from post-release control violations. But offenders also receive notice that prison disciplinary violations may result in bad time. *Bray,* 89 Ohio St.3d at 138-139, 729 N.E.2d at 364 (Cook, J., dissenting); see, also, R.C. 2929.19(B)(3)(b).

{¶ 59} Instead of distinguishing post-release control from bad time, I would test the post-release control statute for a separation-of-powers problem under the "pragmatic, flexible approach" advocated by the United States Supreme Court, and focus on the extent to which R.C. 2967.28 actually *impedes* the judicial branch from accomplishing its constitutionally assigned functions. *Nixon v. Admr. of Gen. Serv.* (1977), 433 U.S. 425, 442-443, 97 S.Ct. 2777, 2789-2790, 53 L.Ed.2d 867, 890-891. The judiciary fulfills its function by imposing sentence on a guilty offender. When applicable, a period of post-release control is a declared component of that judicially-imposed sentence. The executive branch's supervision of a releasee within the parameters of that sentence, and the imposition of statutorily limited sanctions for violations committed during that supervisory period, do not impede the judicial function.

Save Part II(A)'s analysis, I join the majority's opinion and syllabus.

WHITMORE, J., concurs in the foregoing opinion.

_____