OPINION
{¶ 1} Appellant, Tyron R. Wotring, appeals from the judgment entered by the Lake County Court of Common Pleas. Appellant pled guilty to one count of murder and was sentenced to fifteen years to life.
 {¶ 2} Wotring began living with Glen Jefferson in June 1998. The situation soon deteriorated. Wotring stated he was afraid of Jefferson. He claimed Jefferson had told him that he had killed people. Wotring thought he was going to be killed by Jefferson.
 {¶ 3} One night in August 1998, Wotring and Jefferson were with mutual friends. Some witnesses, including Wotring, stated that Jefferson had been drinking. Upon returning to their residence, Wotring thought Jefferson was going to get a gun and kill him. In order to prevent this from occurring, Wotring hit Jefferson in the back of the head with a fire extinguisher. Wotring continued to beat Jefferson with the fire extinguisher for three or four hours. Jefferson died as a result of these injuries. After Jefferson had died, Wotring cut his brain out of his head and placed it in the freezer. He stated that he did this because he felt remorseful, and he believed that scientists would be able to clone Jefferson if he froze the brain. Wotring then cleaned up the residence and went to work.
 {¶ 4} In August 1998, Wotring was indicted for one count of aggravated murder, one count of murder, and one count of abusing a corpse. Wotring entered pleas of not guilty and not guilty by reason of insanity to all of these charges. The trial court referred Wotring to two medical experts to determine if he was competent to stand trial and if he qualified for the not guilty by reason of insanity defense.
 {¶ 5} Wotring saw these experts. They determined that Wotring was competent to stand trial in this case. They further determined that Wotring was not insane when he killed Jefferson. However, they determined that Wotring was insane when he dismembered the corpse, as "the shock and horror of the homicide activated the more fragmented aspects of his mental disease." After this determination, Wotring withdrew his not guilty and not guilty by reason of insanity pleas, and entered a plea of guilty to the murder count. In exchange for this plea, the aggravated murder and abuse of corpse charges were dropped.
 {¶ 6} This court initially released an opinion in this case on December 21, 2001, in which the majority reversed the judgment entered by the trial court and remanded the case for further proceedings.
 {¶ 7} The majority opinion found merit in Wotring's first assignment of error, holding that Wotring was denied the effective assistance of trial counsel. The basis of this holding was that, based on the specific facts of this case, Wotring's trial counsel should have at least requested an additional psychological examination. This was due, in part, to the conclusions reached by the original two experts in their joint report: that Wotring was sane when he beat the victim with a fire extinguisher for three to four hours, but that he was insane moments later when he cut the victim's brain out of his head and placed it in a freezer.
 {¶ 8} Following the release of this court's opinion, the state filed an application for reconsideration pursuant to App.R. 26(A). In a judgment entry dated February 26, 2002, we continued this application to allow the parties to submit additional evidentiary materials.
 {¶ 9} The state then supplemented the record pursuant to App.R. 9 with affidavits from Lake County Public Defender R. Paul LaPlante, Dr. Sandra McPherson, and Chief Deputy Auditor Joseph C. Dowd from the Lake County Auditor's Office. These affidavits all stated that an additional examination was performed on Wotring by Dr. McPherson. Further, Attorney LaPlante's affidavit states that his office has its own budget, that he intentionally paid for the additional evaluation with funds from this budget so that there would be no evidence of an additional examination in the record, and that he discussed the results of this additional examination with Wotring.
 {¶ 10} Following the supplementation of the record, this court issued a judgment entry on April 25, 2002, granting the state's application for reconsideration. This judgment entry vacated the opinion released on December 21, 2001, and reinstated the appeal on this court's docket. The entry also allowed the parties to submit supplemental briefs on the supplemented record.
 {¶ 11} In the same judgment entry, the merits of Wotring's "motion to clarify and/or modify remand to trial court" were also addressed. The majority held that the supplementation of the record was permissible pursuant to App.R. 9(E); that our February 2002 judgment entry did not establish a new rule allowing limited remands to the trial court; that our decision to remand the case to the trial court was strictly limited to the facts and circumstances of this case, because of the unique nature of this case both factually and procedurally; that the purpose of the remand was to determine if Wotring received the effective assistance of counsel, which is an appellate inquiry, thus, there was no prejudice in this court reviewing evidence that was not before the trial court when it rendered its decision, as a trial court does not review a case to determine if a defendant received the effective assistance of counsel; and that the affidavits submitted by the state did not violate Wotring's right to cross-examine witnesses pursuant to the confrontation clause, because the information contained in the affidavits did not involve statements made during the guilt phase of a trial but, rather, was for the limited purpose of establishing whether an additional examination was requested or conducted to determine if Wotring received the effective assistance of counsel.
 {¶ 12} Before specifically addressing Wotring's assignments of error, there are two important, but conflicting, legal concepts at issue in this case, both of which are designed to protect the accused. The first is an attorney's duty to zealously represent his client.[1] In this case, Attorney LaPlante diligently discharged that duty by keeping the additional examination secret, so that the prosecution would not discover the results and be able to negatively use such results. The result of this strategy is that the record was devoid of any evidentiary material that indicated an additional evaluation was conducted.
 {¶ 13} The second concept is that, when raised as an assigned error on appeal, an appellate court is to review the record to ensure that the accused received the effective assistance of counsel guaranteed by the United States Constitution.
 {¶ 14} The initial majority opinion held that, based solely on the unique facts of this case and the somewhat contradictory results of the initial examination, the failure to even request an additional examination amounted to ineffective assistance of counsel.
 {¶ 15} This court's job was to review the record to ensure that Wotring received effective assistance of counsel. There was nothing in the original record to show that this additional examination was conducted or even requested. This leaves an appellate court with nothing to indicate that an additional examination was conducted, as an appellate court is limited to the record before it.[2] Therefore, the majority held that Wotring did not receive effective assistance of counsel.
 {¶ 16} Wotring raised two assignments of error in his original brief on appeal. He has also raised an additional assignment of error in his supplemental brief. Wotring's assigned errors are:
 {¶ 17} "[1.] The appellant received ineffective assistance of trial counsel, in violation of his rights, pursuant to theSixth Amendment of the Constitution of the United States and Article 1, Section 10, of the Constitution of the State of Ohio.
 {¶ 18} "[2.] The trial court committed reversible error by failing to adequately advise the appellant of the maximum penalty involved for the crime to which the appellant pled guilty, in violation of Crim.R. 11(C).
 {¶ 19} "[Supplemental] The appellant received ineffective assistance of trial counsel, in violation of his rights, pursuant to theSixth Amendment to the Constitution of the United States and Article 1, Section 10, of the Constitution of the State of Ohio."
 {¶ 20} Wotring's first and supplemental assignments of error are substantially similar. Therefore, we will address both of these assigned errors in a single analysis.
 {¶ 21} Wotring argues that his trial counsel was ineffective, because counsel should not have accepted the conclusions of the two medical experts. These statements concluded that Wotring understood killing was wrong and, therefore, did not qualify for the defense of not guilty by reason of insanity. Wotring asserts that trial counsel should have requested additional examinations to contradict the original findings. Finally, Wotring claims trial counsel was ineffective because it failed to discover analogous case law where defendants succeeded with not guilty by reason of insanity pleas.
 {¶ 22} A claim for ineffective assistance of counsel is waived by a guilty plea, unless the ineffective assistance caused the guilty plea to be involuntary.[3] Wotring originally entered pleas of not guilty and not guilty by reason of insanity. Wotring, therefore, would not have voluntarily pled guilty to murder, if the not guilty by reason of insanity defense was available. Wotring has not waived his right to challenge the effectiveness of counsel.
 {¶ 23} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance."[4]
 {¶ 24} "A person is `not guilty by reason of insanity' relative to a charge of an offense only if the person proves *** that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts."[5] This burden is on the defendant and must be proved by a preponderance of the evidence.[6]
 {¶ 25} The original experts who evaluated Wotring concluded that he did understand the wrongfulness of killing another human being. In their report, the experts point to many factors to support this conclusion. They note that Wotring stated he knew the act was wrong, but believed he had no choice. They also note that Wotring admitted he was not suffering from any hallucinations at the time of the offense. Finally, they point to various facts of the crime itself: "(a) he cleaned up and washed his clothes; (b) he washed and placed the fire extinguisher in the cabinet; (c) he went to work to avoid suspicion; and (d) he indicated to us that he gave consideration to burning the house down and/or burying the body in order to conceal the crime."
 {¶ 26} Wotring also argues that his trial counsel was ineffective for failing to research analogous case law. Specifically, Wotring notes that in State v. Hubbard, the defendant succeeded on a not guilty by reason of insanity defense, because his mental illness made him think he was justified to use self-defense to shoot at red cars, who were "government agents trying to attack him with microwaves."[7] Wotring argues that, although he understood killing in general was wrong, his mental illness prevented him from understanding when he was permitted to use deadly force in self-defense. The medical experts in Hubbard determined that the defendant DID NOT understand the wrongfulness of his acts.[8] In the case before us, the medical experts determined that Wotring DID understand the wrongfulness of his acts at the time of the killing. Thus, the finding in Hubbard is not determinative to this case.
 {¶ 27} Wotring's assertions that his trial counsel should have requested an additional examination are contradicted by the evidence supplemented into the record. The supplemental evidence shows that an additional examination was conducted.
 {¶ 28} Even if the additional evaluation(s) produced different results, a trier-of-fact could still have concluded, based on the initial examinations, that Wotring did not meet his burden and, thus, did not qualify for the not guilty by reason of insanity defense. This is a risk of going to trial. Wotring's trial counsel apparently recognized this risk and advised Wotring to accept a plea agreement. Wotring's trial counsel did not violate an objective standard of reasonable representation by advising him to enter into a plea agreement.
 {¶ 29} As part of the plea agreement, the aggravated murder charge and the abuse of corpse charge were dropped. By accepting this agreement, Wotring avoided the possibility of a more severe penalty being imposed as a result of convictions to all three charges.
 {¶ 30} Wotring was not denied the effective assistance of counsel. Wotring's first and supplemental assignments of error are without merit.
 {¶ 31} In his second assignment of error, Wotring claims the trial court failed to inform him of the possibility of post-release control.
 {¶ 32} Before accepting a guilty plea, a trial court must personally address the defendant and make sure he or she understands the nature of the charges and the maximum penalty involved.[9]
 {¶ 33} Wotring claims the trial court erred when it did not inform him of the maximum penalty that could be imposed for the crime he pled to — murder. Specifically, Wotring argues that post-release control is part of the maximum penalty for murder. The trial court did not advise Wotring about the possibility of post-release control.
 {¶ 34} We do not agree with Wotring's argument. The trial court personally informed Wotring that "your maximum sentence could be an indefinite term of 15 years to life." Life in prison is the maximum sentence. Post-release control is clearly less of a punishment than life in prison. By definition, post-release control means you have been released from prison.
 {¶ 35} Wotring cites Woods v. Telb, wherein the Supreme Court of Ohio upheld the constitutionality of post-release control.[10] The court held that post-release control was mandatory for first degree felonies, second degree felonies, sex felonies, and certain third degree felonies where force is used.[11] The court also stated that a sentencing court must, at the time of the plea hearing, inform the defendant that post-release control is part of the offender's sentence.[12]
Wotring was not convicted of a first or second degree felony or a sex felony, he was convicted of murder. Murder is not classified as a first or second degree felony but, rather, as its own offense.[13]
 {¶ 36} We do not find Woods to be controlling, because Wotring was not given post-release control. Post-release control was not mandatory, due to the fact that Wotring was convicted of murder. Woods concerned a plea to a fifth degree felony, and the post-release control was discretionary. In this case, the written plea of guilty and judgment entry had the standard language concerning post-release control crossed out. This document was signed by Wotring and by the trial court, and Wotring initialed the specific page where this language was crossed out. Wotring was not advised of post-release control, because post-release control was not part of his sentence.
 {¶ 37} Wotring's second assignment of error is also without merit. The judgment of the trial court is affirmed.
DONALD R. FORD, J., concurs.
DIANE V. GRENDELL, J., concurs with concurring opinion.
[1] DR 7-101.
[2] State v. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus.
[3] State v. Lewis (Aug. 19, 1994), 11th Dist. No. 92-T-4687, 1994 Ohio App. LEXIS 3652, at *10-11, citing State v. Barnett (1991),73 Ohio App.3d 244.
[4] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. (Adopting the test set forth in Strickland v. Washington
(1984), 466 U.S. 668.)
[5] R.C. 2901.01(A)(14).
[6] (Citation omitted.) State v. Filiaggi (1999), 86 Ohio St.3d 230,242.
[7] State v. Hubbard (Nov. 5, 1999), 11th Dist. No. 97-T-0144, 1999 Ohio App. LEXIS 5248.
[8] Id.
[9] Crim.R. 11(C)(2)(a).
[10] Woods v. Telb (2000), 89 Ohio St.3d 504.
[11] Id. at 509.
[12] Id. at 513.
[13] R.C. 2901.02(A).
DIANE V. GRENDELL, J., concurring.
 {¶ 38} After a long and arduous journey, this case has reached the correct result — affirmance of the trial court's decision. Since I have supported such affirmance from the onset (see December 21, 2001 Dissenting Opinion), I concur with the affirmance of the trial court's rulings. This concurrence, however, is based on the original record.[14]
 {¶ 39} From the start of this appeal the record supported affirmance of the lower court's decision.
 {¶ 40} A defendant seeking the not guilty by reason of insanity defense must establish both a severe mental disease or defect and that the defendant did not know the wrongfulness of his or her act. R.C.2901.01(A)(14). The record, as initially submitted to this court, evidences that appellant failed the second prong of the insanity defense test. Appellant admitted that (i) he "knew it was wrong", (ii) he went to work after committing the crime because "he didn't want to arouse suspicion", and (iii) he thought about burning the house down or burying the body to conceal the crime. Appellant cleaned up the crime scene and washed his clothes. Appellant's admissions and actions support the mental health experts' professional medical (not legal) conclusion that appellant's mental condition did not prevent him from understanding the wrongfulness of his homicidal conduct. Under these circumstances, appellant's trial attorney's legal representation through a change of plea constitutes professional conduct well within an objective standard of reasonableness. The medical conclusion proffered by the state was bolstered by appellant's trial counsel's decision not to submit testimony from the mental health professional retained by appellant's trial attorney on this issue during the proceedings below. Had the opinion of the experts retained on behalf of appellant been favorable, appellant would have introduced that opinion.
 {¶ 41} In appellant's latest brief, appellant's appellate attorney revisits his argument that the mental health professionals participating in the court ordered evaluation misconstrued the law in reaching their legal sanity conclusion. In this regard, appellant's appellate counsel brazenly and erroneously chastises this judge for allegedly "not thoroughly" reading appellant's initial brief on this alleged "misconstruction of the law" issue. It is counsel for appellant who apparently has failed to read the initial dissent in this case, in which this judge specifically addressed and rejected appellant's "misconstruction of law" argument, holding that appellant's admissions and actions "support the expert's professional medical (not legal) conclusion" as to appellant's mental condition. As demonstrated by the reassertion of that conclusion above, appellant's "misconstruction of the law" argument is not supported by the initial record before this court and no amount of oral argument or discussion about "focus" by appellant's appellate counsel will change that result.
 {¶ 42} It is beyond time for closure in this case. For the reasons stated in my initial dissent, as partially reiterated above, I concur in affirming the trial court's decision in this case.
[14] Supplementation of the record is neither necessary, nor procedurally appropriate or proper for the reasons stated in the April 25, 2002 Concurring/Dissenting Opinion in this case. For the reasons stated in this concurrence, this court can reach the correct decision and achieve justice with the record as originally filed with this court.