The STATE of Ohio, Appellee,

v.

HARRIS, Appellant.

[Cite as *State v. Harris,* 160 Ohio App.3d 851, 2005-Ohio-2503]

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5–04–46.

Decided May 23, 2005.

Robert A. Fry, Hancock County Prosecuting Attorney, and Mark C. Miller, Assistant Prosecuting Attorney, for appellee.

Lisa A. Miller, for appellant.

ROGERS, Judge.

{¶ 1} Defendant-appellant, Annie M. Harris, appeals a judgment of the Hancock County Court of Common Pleas, sentencing her, upon a plea of guilty to felonious assault, with a gun specification. On appeal, Harris asserts that the trial court failed to substantially comply with Crim.R. 11. While we are satisfied that the trial court did comply with Crim.R. 11, we find that the trial court failed to notify Harris about postrelease control at the time of sentencing, pursuant to *State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864. Accordingly, the judgment of the trial court is reversed, and the matter is remanded to the trial court for resentencing.

{¶ 2} On January 30, 2004, Harris, along with John McDonald, Arnethya Denson, and Beth Perry, came to Findlay to visit Harris's son, Quincy McDonald, and his wife at their apartment complex. After visiting Quincy, Harris, John, Denson, and Perry went to drink at a local bar. In the early morning hours of January 31, 2004, the group returned to Quincy's apartment. While in Quincy's apartment, an altercation occurred between John, Quincy, and Denson. At her sentencing hearing, Harris stated that she had been sitting on the couch in one room while the altercation took place in another. The state disputed Harris's story. At some point during the altercation, John shot Quincy one time in the chest. John then dropped the gun and went to Quincy's aid. At the plea hearing, as well as at the sentencing hearing, Harris stated that upon realizing that Quincy had been shot, she picked up the gun and shot John in the buttocks. She also stated that she had attempted to fire the gun a second time, but it would not fire. Quincy subsequently died from his injuries.

{¶ 3} In February 2004, Harris was indicted for attempted murder in violation of R.C. 2923.02(A), with a gun specification, a felony of the first degree. Additionally, Harris was indicted for felonious assault in violation of R.C. 2903.11(A)(2), with a gun specification, a felony of the second degree.

{¶ 4} In September 2004, Harris entered a plea of guilty to felonious assault, with a gun specification, and the state moved to dismiss the charge of attempted murder. At a plea hearing, the trial court questioned Harris at length before accepting her plea of guilty.

{¶ 5} Subsequently, a sentencing hearing was held, and Harris was sentenced to five years of imprisonment on the charge of felonious assault and was given an additional one-year sentence of imprisonment for the gun specification. It is from this sentence that Harris appeals, presenting the following assignment of error for our review.

The Appellant contends that she was prejudiced by the trial court's failure to substantially comply with Rule 11 of the Ohio Rules of Criminal Procedure.

{¶ 6} In her sole assignment of error, Harris asserts that the trial court failed to substantially comply with Crim.R. 11.

{¶ 7} Crim.R. 11(C)(2) outlines the procedures that a trial court must follow for accepting guilty pleas in felony cases. Pursuant to that rule, before accepting a guilty plea to a felony charge, the trial court must first conduct a colloquy with the defendant to determine that she understands the plea she is entering and the rights she is voluntarily waiving by doing so. Crim.R. 11(C)(2); see, also, *State v. Tucci*, 7th Dist. No. 01 CA 234, 2002-Ohio-6903, 2002 WL 31812895. A trial court must specifically inform a defendant that there are four rights that a guilty plea waives: the rights to try the case before a jury, confront witnesses, and compel witnesses by compulsory process, as well as the privilege against self-incrimination. *Boykin v. Alabama* (1969), 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274; *State v. Ballard* (1981), 66 Ohio St.2d 473, 20 O.O.3d 397, 423 N.E.2d 115, paragraph one of the syllabus. The court must advise the defendant that a plea of guilty waives each of these rights. Id. at 479–481, 20 O.O.3d 397, 423 N.E.2d 115.

{¶ 8} The record in this case clearly demonstrates that the trial court engaged in the colloquy required by Crim.R. 11, advising Harris of the rights she was waiving by pleading guilty to felonious assault with a gun specification. At the September 2004 hearing, the trial court questioned Harris extensively to determine whether she understood the consequences of her plea and that she was waiving certain constitutional rights. The following took place on the record:

Court: You have the right to a trial by jury and proceeding that we still have pending motions that have been filed on your behalf by Mr. Galose that have yet to be heard. If you go ahead and plead today, you would be effectively withdrawing those motions, and I wouldn't be deciding those legal issues, then we would be proceeding directly to issue of sentence. So you understand you're waiving to challenge the evidence that you're presenting to the court?

Defendant: Yes.

Court: Do you understand you're also waiving the right to a trial by jury, and that means you have the right to have twelve persons be seated if [sic] this jury box, and they could decide your guilt or innocence on one or both of these charges?

Defendant: Yes, sir.

Court: Do you understand at a trial it's the burden that the State of Ohio has. You have no burden. They have the burden to prove your guilt beyond a reasonable doubt?

Defendant: Yes, sir.

Court: You have no requirement to prove your innocence. To that end, if the State calls witnesses, Mr. Galose can cross examine them. Do you understand you can subpoena witnesses to come into court to testify for you?

Defendant: Yes, sir.

Court: At trial you cannot be made to testify against yourself. If you want to, that's a decision you and Mr. Galose would make. But the State cannot call you as a witness against yourself, nor comment upon your silence if you don't take the witness stand. Do you understand that?

Defendant: Yes, sir.

Court: If we went to a jury trial, do you understand that all the jurors would have to agree upon your guilt or your innocence?

Defendant: Yes, sir.

Court: And you could waive that right and have me decide your guilt or innocence, but that would be your decision?

Defendant: Yes, sir

Court: Now those are the rights that you're giving up, Ms. Harris. There is a second set of rights I want to make sure that you understand you're not giving up. That's the right to potentially appeal this Court's decision. Even if you plead guilty, depending on the Court's decision making and findings, do you understand you still get to file an appeal?

Defendant: Yes, sir.

Court: And do you understand generally that has to be done within 30 days after the Court imposes sentence?

Defendant: Yes, sir.

Court: And also, if you wanted to file an appeal, you couldn't afford to, the Court would appoint an attorney to assist you and have the appeal costs paid for at public expense. Do you understand those rights?

Defendant: Yes, sir.

Court: Ms. Harris, do you have any questions of me before we go forward?

Defendant: No, sir.

Court: Do you want to talk to Mr. Galose about anything?

Defendant: No, sir.

Court: Are you certain this is what your want to do?

Defendant: Yes, sir.

Court: With respect to any sentence, has anybody made any promises to you as to what I'm going to do?

Defendant: No, sir.

Court: Anybody tried to threaten you and force you to do this?

Defendant: No, sir.

{¶ 9} Additionally, the trial court extensively questioned Harris as to whether she was on any medications and whether any such medications would affect her judgment as she stood before the trial court. Harris specifically stated that neither her medications nor anything else was clouding her judgment. Additionally, the trial court went on at length about the possible sentences Harris faced, including postrelease control.

{¶ 10} Thus, upon review of the record, we find that it is clear that the trial court substantially complied with the requirements put forth by Crim.R. 11. Accordingly, we find that trial court properly accepted Harris's guilty plea to the charge of felonious assault, and Harris's assignment of error as to the Crim.R. 11 issue is overruled.

{¶ 11} While Harris's assignment of error specifically refers to Crim.R. 11, she also raises within that argument an error regarding her sentence. Essentially, Harris argues that the trial court's failure to personally address Harris at the time of sentencing to determine whether she subjectively understood that she was subject to postrelease control is error. While this should have been raised as a separate assignment of error, we elect to address it in the interest of justice.

{¶ 12} In *State v. Jordan*, the Ohio Supreme Court recently addressed the issue of whether a trial court must notify an offender of postrelease control at the time of sentencing or whether a trial court may incorporate the notice into its sentencing entry. Id., 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, at paragraph one of the syllabus. In determining this issue, the *Jordan* court specifically addressed R.C. 2929.19(B)(3), which states:

Subject to division (B)(4) of this section, if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:

* * *

(c) Notify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the first degree or second degree, for a felony sex offense, or for a felony of the third degree in the commission of which the offender caused or threatened to cause physical harm to a person;

(d) Notify the offender that the offender may be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the third, fourth, or fifth degree that is not subject to division (B)(3)(c) of this section.

{¶ 13} In determining this issue, the Supreme Court held that "when a trial court fails to notify an offender about postrelease control at the *sentencing hearing* but incorporates that notice into its journal entry imposing sentence, it fails to comply with the mandatory provisions of R.C. 2929.19(B)(3)(c) and (d), and, therefore, the sentence must be vacated and the matter remanded to the trial court for resentencing." Id. at ¶ 27. (Emphasis added.)

{¶ 14} At oral argument in this case, the state raised the issue of the seeming discrepancy between the Supreme Court's pronouncement in *Jordan* and its prior decision in *Woods v. Telb* (2000), 89 Ohio St.3d 504, 733 N.E.2d 1103. In *Telb*, the court held that "pursuant to R.C. 2967.28(B) and (C), a trial court must inform the offender at *sentencing or at the time of a plea hearing* that post-release control is part of the offender's sentence." Id. at 513, 733 N.E.2d 1103. (Emphasis added.)

{¶ 15} While the Supreme Court's holdings are somewhat at odds, the two opinions can be reconciled. First, in *Telb*, the Supreme Court was specifically addressing the constitutionality of R.C. 2967.28, Ohio's postrelease-control statute. Id. at 507, 733 N.E.2d 1103. Accordingly, in *Telb*, while the court did comment on this procedural issue, that was not the specific issue before the court. In *Jordan*, however, the court was specifically asked to address the issue of whether a trial court must notify an offender about postrelease control at the time of sentencing as opposed to merely incorporating that into its judgment entry, pursuant to R.C. 2929.19. *Jordan*, at ¶ 1. Thus, the issue before the court in *Telb* involved the constitutionality of the statute governing postrelease control, while the *Jordan* court was analyzing the more specific issue of how a trial court is required to notify an offender of postrelease control, pursuant to R.C. 2929.19.

{¶ 16} Furthermore, in *Jordan* the court expressly addresses the *Telb* case. Specifically, the court said the following:

In *Woods v. Telb,* * * * we detailed the constitutional significance of a trial court including postrelease control in its sentence. We stated that because the

separation-of-powers doctrine precludes the executive branch of government from impeding the judiciary's ability to impose a sentence, the problem of having the Adult Parole Authority impose postrelease control at its discretion is remedied by a trial court incorporating postrelease control into its original sentence. * * * Consequently, unless a trial court includes postrelease control in its sentence, the Adult Parole Authority is without authority to impose it. * * * Today, we reaffirm that holding.

*Jordan* at ¶ 19. Additionally, the court went on to state that its analysis in *Jordan* goes deeper than that considered by the court in *Telb*. Id. at ¶ 20. Thus, considering that *Telb* did not specifically address the issue of R.C. 2929.19(B)(3)(c) and (d), which specifically states that the issue of postrelease control must be addressed at the time of sentencing, we find that the Supreme Court superceded its holding as to that issue but affirmed *Telb* in all other respects.

{¶ 17} Accordingly, we find that *Jordan* is controlling and that the trial court was required to notify Harris of postrelease control at the time of sentencing. See, also, *State v. Weems*, 9th Dist. No. 22192, 2005-Ohio-1000, 2005 WL 544835, at ¶ 7–8; *State v. Cloud*, 7th Dist. No. 01 CO 64, 2005-Ohio-1331, 2005 WL 678767, at ¶ 10–33; *State v. Parrett*, 12th Dist. No. CA2004–09–016, 2005-Ohio-557, 2005 WL 336335, at ¶ 8–12.

{¶ 18} In the case sub judice, while the trial court extensively addressed the issue of postrelease control at the *plea* hearing, the trial court failed to notify Harris about postrelease control at the *sentencing* hearing. Thus, pursuant to the Supreme Court's recent decision in *Jordan*, we hold that Harris's argument has merit and that the sentence must be vacated and the matter remanded to the trial court for resentencing.

{¶ 19} Having found error prejudicial to the appellant herein, we reverse the judgment of the trial court and remand to the trial court for resentencing. However, having found no error prejudicial to the appellant on the issue of her plea, we affirm the judgment of the trial court as to that matter.

Judgment reversed
and cause remanded.

CUPP, P.J., and THOMAS F. BRYANT, J., concur.