{¶ 52} I respectfully dissent. There was legally insufficient evidence to prove the essential element of the charged crime: that defendant ever resided in Cuyahoga County, and was thus required to register as a sexually oriented offender specifically in that county. In addition, because defendant was incarcerated for six months on an invalid parole hold,[1] the state violated his statutorily mandated right to a speedy trial when it failed to arraign him and bring him to trial within 90 days of his arrest and incarceration. For both of the foregoing reasons, I would reverse his conviction.
Legal Sufficiency of the Evidence: Residency
 {¶ 53} The majority makes much of the fact that defendant was required, by operation of law, to register as a sex offender. The issue before this court, however, is not whether defendant was required to register as a sexually oriented offender. This fact was and remains undisputed. Instead, the issue before this court, which the majority utterly fails to address, is whether there was legally sufficientevidence to support defendant's conviction for a violation of R.C.2950.04. The answer, quite simply, is that the state failed to prove that defendant, charged with failure to register in CuyahogaCounty, ever resided in Cuyahoga County, an essential element of the crime.
 {¶ 54} R.C. 2950.04(A)(1) provides, in relevant part, that a person convicted of a non-exempt sexually oriented offense "shall register personally with the sheriff of the county within five days of the offender's coming into a county in which the offender resides ortemporarily is domiciled for more than five days * * * and shall register with the sheriff or other appropriate person of the other state immediately upon entering into any other state other than this state." (Emphasis added.)
 {¶ 55} Pursuant to R.C. 2950.05, a sexually oriented offender is required to provide notice of a change of address, at least 20 days prior to changing the address, "to the sheriff with whom the offender * * * most recently registered the address under section 2950.04 * * * ."
 {¶ 56} In the present case, defendant was charged with failure to register as a sexually oriented offender in Cuyahoga County in violation of R.C. 2950.04. The evidence at trial demonstrated that, on the day of his release from prison, defendant was handed a form entitled "Explanation of Duties to Register as a Sex Offender." The form, in relevant part, reads:
 * * *
 2. You are required to register in person with the sheriff of the county in which you establish residency within 7 days of coming into that county.
 * * *
 4. If you change residence address, you shall provide notice of change of residence address to the sheriff with whom you most recently registered at least 7 days prior to any change of residence address.
 * * *
 6. Since your expected residence address as stated above in [sic] located in Cuyahoga County, you shall register in person no later than 01/17/2003 with the following county sheriff's office: Cuyahoga County Sheriff's Office * * * .
Joint Trial Exhibit 1.
 {¶ 57} The uncontested evidence at trial demonstrated that the "expected residence address" written on the form — 2100 Lakeside Avenue, Cleveland, Ohio — was not provided by defendant but had instead been provided by the Adult Parole Authority. After the form was shown and explained to him, defendant elected not to sign the form containing the "expected" Cleveland address, and he did not provide an alternative address. None of the state's three witnesses had personal knowledge or produced any evidence that defendant ever established residency in Cuyahoga County after his release from prison.
 {¶ 58} On the contrary, one of the state's three witnesses testified that the only information he had regarding defendant's whereabouts indicated that he had gone to Massachusetts after his release from prison. In fact, the record before us demonstrates that five days after his release, defendant applied for and obtained a Massachusetts driver's license in his name. Defendant lived with his sister in Yarmouth, Massachusetts, for two months until he moved in with and cared for their elderly mother, who lived next door to his sister. While living openly in Massachusetts, defendant voluntarily sought out and continued with counseling and eventually secured full-time employment there.[2]
 {¶ 59} At the conclusion of the state's case, defense counsel moved for dismissal on the grounds that the evidence at trial was legally insufficient because the state failed to present any evidence that defendant ever resided in Ohio after his release from prison. The trial court erroneously denied the motion.
 {¶ 60} In its instructions to the jury, the trial court explained that in order to find defendant guilty of a violation of R.C. 2950.04(A)(1), the jury must find beyond a reasonable doubt that defendant failed to register as a sex offender in Cuyahoga County. The court explained that the term "to register" means to return a required form and photograph to the sheriff. The court then summarized the relevant statute regarding "duty to register":
 An offender who is convicted of or pleads guilty, or has been convicted of or pleaded guilty to, a sexually oriented offense shall register personally with the sheriff of the county within seven days of the offender's coming into a county in which the offender resides or temporarily is domiciled for more than seven days.
Tr. 189-190.
 {¶ 61} During its deliberations, the jury sent out the following note requesting clarification of what it described as "two legal issues":
 (1) DOES THE STATE OF OHIO HAVE THE AUTHORITY TO ESTABLISH INITIAL LEGAL RESIDENCE FOR A SEXUALLY ORIENTED OFFENDER IN THE EVENT THAT HE FAILS TO PROVIDE IT ON THE FORM ENTITLED "EXPLANATION OF DUTIES TO REGISTER AS A SEX OFFENDER"? (JOINT EXHIBIT 1)
 (2) THE FORM ENTITLED "EXPLANATION OF DUTIES TO REGISTER AS A SEX OFFENDER" (JOINT EXHIBIT 1) SEEMS AMBIGUOUS. POINT 2 STATES, "YOU ARE REQUIRED TO REGISTER IN PERSON WITH THE SHERIFF OF THE COUNTY IN WHICH YOU ESTABLISH RESIDENCY WITHIN 7 DAYS OF COMING INTO THAT COUNTY," WHICH SEEMS TO SUGGEST THAT THE DEFENDENT [SIC] COULD REGISTER ANYWHERE, HOWEVER, POINT SIX STATES THAT THE DEFENDENT [SIC] SHALL REGISTER IN PERSON NO LATER THAN 01/17/2003 WITH THE * * * CUYAHOGA COUNTY SHERIFF'S OFFICE."
 FOR ALL WE KNOW, THE DEFENDENT [SIC] MAY NOT HAVE ENTERED CUYAHOGA COUNTY AT ALL WITH THE INTENTION TO ESTABLISH RESIDENCY. DOES POINT 2 ALLOW THE DEFENDENT [SIC] THE OPTION OF REGISTERING IN ANOTHER COUNTY OR STATE, OR WAS HE NEVERTHELESS REQUIRED, AS STATED IN POINT SIX, TO SHOW UP IN PERSON WITHIN 7 DAYS TO REGISTER SPECIFICALLY WITH THE CUYAHOGA COUNTY SHERIFF BEFORE ESTABLISHING RESIDENCE OR DOMICILING ELSEWHERE?
Tr. 204-205.
 {¶ 62} The jury's questions identify the central issue here: whether defendant had to register in Cuyahoga County. Moreover, the questions expose the clear error in the form's statement that defendant was required to register in Cuyahoga County. The trial judge did not answer the jury's questions, and simply informed them: "[Y]ou have all the law and all the evidence necessary to render a verdict. Please refer to the instructions that were given to you in the book."
 {¶ 63} The answer to the jury's first question, however, was clearly no. R.C. 2950.04 plainly does not authorize the state to order a sexually oriented offender to register in a particular county. Thestatute is unambiguous: an offender must register with the sheriff ofthe "county in which the offender resides or temporarily isdomiciled." Significantly, the statute under which defendant was convicted does not require an offender to inform any authorities — a corrections officer, a parole officer, or any other official — of where he intends or "expects" to reside when he walks out of the prison doors.
 {¶ 64} The majority suggests, however, that, because defendant "was a Cleveland resident at the time of his conviction for rape," he was, apparently by default, required to register in Cleveland in the event he could not provide an expected residence address to prison authorities at the time of his release. The statute, however, does not authorize the assignment of a default address. It clearly requires that a defendant register only where he actually ends up residing. Even if an offender's residency is determined at the time of his conviction, the time period for registration is triggered only by his "coming into a county." The record here demonstrates that defendant was imprisoned in Lorain County and within five days of his release resided in Massachusetts. There is no evidence he ever came into Cuyahoga County.
 {¶ 65} Ironically, the jury's question regarding the state's authority to order defendant to report to a particular county sharply highlighted the trial court's error in denying the Rule 29 motion. In a case where the only evidence presented by the state proved that defendant never entered Cuyahoga County, there simply were no factual questions for the jury to resolve. The only question was, as the jury properly identified it, a legal one. Unless the state was authorized under R.C. 2950.04 to tell defendant where to register, the jury could not possibly find him guilty of failing to register in a county in which he never actually resided. The court was thus faced with the very question posed by defendant's Rule 29 motion: whether defendant is guilty of the charged crime when he neither resided in nor came into Cuyahoga County.
 {¶ 66} Nor, as the majority suggests, was defendant required to provide the Cuyahoga County Sheriff's Office with any information about a change of address — specifically that he either was planning to live in or had established residency in Massachusetts — again, because he never resided in Cuyahoga County after his release from prison and was thus never required to register here. R.C. 2950.05(A) clearly requires that a notice of a change of address be provided to the "sheriff with whom the offender * * * most recently registered." (Emphasis added.) This requirement is not triggered unless an offender has already registered in another county. The key to this statute is prior registration, not prior residency. Thus, contrary to the majority's assertion, R.C.2950.05 clearly does not require a defendant to provide notice of a change of address to the sheriff of the county where he last resided before he entered prison.
 {¶ 67} Indeed, even the form given to defendant when he left prison explained that, should he change his address, he was required to notify the sheriff with whom he had most recently registered as a sexuallyoriented offender. Because defendant's initial residence upon his release from prison was in Massachusetts, he was required to register with the sheriff of the county in Massachusetts in which he established residency. The instant indictment, however, does not allege that defendant failed to register in Massachusetts.
 {¶ 68} The jury's second question once again demonstrated that the only issues before it were questions of law, not fact. Specifically, the jury requested clarification regarding the obvious contradiction between two items explaining defendant's registration requirements as stated on the form he was given before he left prison. As the jury noted, item number two on the form explained, following the language of R.C.2950.04, that defendant was required to register in the county where he established residency. Item number six, however, then stated that, because of his "expected residence address," defendant "shall register" with the Cuyahoga County Sheriff's Office.
 {¶ 69} The jury rightly questioned whether defendant was entitled to register wherever he established residence, as explained in item two, or whether he was required, pursuant to item six, to first register in Cuyahoga County. The answer to the jury's question, although the trial court declined to provide it, was that, pursuant to R.C. 2950.04, defendant was required to register only where he actually establishedresidency. The statute clearly controls over the inherently contradictory form used by the Department of Corrections. While the legislature may want to consider requiring a defendant leaving prison who is uncertain of his future whereabouts to register somewhere and to thereafter notify the authorities in the county where he registered of the location of his actual residency, the statutes as currently enacted do not require this of a defendant. It was the state's burden to produce legally sufficient evidence to support a conviction. When, as here, it is undisputed that defendant actually established residency in Massachusetts upon his release from prison, the evidence was legally insufficient to sustain a conviction under the plain language of R.C. 2950.04.and 2950.05.
APA-Imposed Postrelease Control Invalid Under Hernandez v. Kelly
 {¶ 70} The state clearly proceeded with the prosecution of defendant on the false assumption that defendant was required to register as a sexually oriented offender in Cuyahoga County because the Adult Parole Authority, believing that defendant was subject to a mandatory 5-year term of postrelease control, had ordered him to report to an address there. Again, R.C. 2950.04 does not require that a defendant, even one properly under the supervision of the Adult Parole Authority (APA), register as a sex offender in the county in which the APA orders him to reside. Under the statute as currently enacted, he must register where he actually resides. Certainly, a defendant who fails to report to the residence or the parole supervisor assigned to him may well be guilty of escape. He is not, however, guilty of a violation of R.C. 2950.04 as it is currently written. In any event, as the state conceded below,[3]
because the trial court failed to notify defendant or include any reference to postrelease control in its journalized sentencing entry, the APA was not empowered to exercise postrelease control authority over defendant when he was released from prison. Hernandez v. Kelly, supra,108 Ohio St.3d 395.
 {¶ 71} In Hernandez, the Ohio Supreme Court reaffirmed its line of cases in which it explicitly held that the separation of powers doctrine precludes the Adult Parole Authority from imposing any term of postrelease control unless a trial court includes postrelease control as part of its sentence. Id. at 397-398; see State v. Jordan,104 Ohio St.3d 21, 25-27; Woods v. Telb, 89 Ohio St.3d 504, 512-513. In the Court's own words:
 In Woods v. Telb [citation omitted], we detailed the constitutional significance of a trial court including postrelease control in its sentence. We stated that because the separation-of-powers doctrine precludes the executive branch of government from impeding the judiciary's ability to impose a sentence, the problem of having the Adult Parole Authority impose postrelease control at its discretion is remedied by a trial court incorporating postrelease control into its original sentence. Consequently, unless a trial court includes postrelease control in its sentence, the Adult Parole Authority is without authority to impose it.
State v. Jordan, 104 Ohio St.3d at 25-26.
 {¶ 72} In Jordan, the Court further explained that, regardless of whether the postrelease control is mandatory or discretionary, notice to a defendant about postrelease control, along with incorporation of this notice in a trial court's sentencing entry, is what " empowers theexecutive branch of government to exercise its discretion. " Id. at 27 (emphasis added). Accordingly, in Hernandez, supra, the Court firmly and explicitly held that, when a trial court had failed to journalize a defendant's term of postrelease control, the APA's determination that the defendant had violated his postrelease control and the sentence the APA imposed upon the defendant for such violation were unlawful.Hernandez at 397. Moreover, because the defendant in Hernandez had fully served his originally imposed sentence, the Court ordered that he be released from prison and from any further postrelease control. Id. at 401. The Court emphasized that such a result "avoids any potential separation-of-powers problems." Hernandez, supra at 398.
 {¶ 73} The majority asserts that Hernandez has been superceded by the legislature's enactment of Am. Sub. H.B. 137, which amended various sections of R.C. 2929 and R.C. 2967.28 in an attempt to make felony offenders subject to postrelease control by operation of law, regardless of whether a trial court includes postrelease control in its sentencing entry. Clearly the legislature, and apparently the majority in its opinion, has ignored the separation of powers doctrine and assert the executive branch's authority to impose postrelease control without the necessary judicial empowerment. This challenge, however, cannot survive constitutional scrutiny.
 {¶ 74} In two cases since Am. Sub. H.B. 137's enactment, the Ohio Supreme Court has held that, pursuant to its holding inHernandez, both a trial court and the APA were without authority to impose a term of postrelease control after the defendant had fully served his originally imposed sentence, which did not include a term of postrelease control. Gensley v. Eberlin (2006), 110 Ohio St.3d 1474;Adkins v. Wilson (2006), 110 Ohio St.3d 1454.
 {¶ 75} In Watkins v. Collins (Oct. 4, 2006), 2006-Ohio-5082, the Court addressed the claims of petitioners whose sentencing entries included a term of postrelease control, but mistakenly indicated that the term was discretionary rather than mandatory. The Court held that the trial court's notice to petitioners "contained sufficient language toauthorize the Adult Parole Authority to exercise postrelease control over the petitioners." Id. at ¶ 53 (emphasis added). The Court clarified that the sentencing entries in Hernandez and Adkins, however, contained no reference whatsoever to postrelease control, and in Gensley there was only a vague reference to whether defendant understood the possibility of postrelease control. Reaffirming the constitutional principles underlying its holdings in Hernandez, Jordan, and Woods, the Court reiterated that "unless a trial court includes postrelease control in its sentence, the Adult Parole Authority is without authority to impose it." Watkins, supra, at ¶ 49.
 {¶ 76} Even if the amended statutes were to survive constitutional scrutiny, the Ohio Supreme Court has unequivocally held they do not apply to a defendant, like the defendant in the present case, whose originally imposed sentence expired before the amended statute went into effect. Gensley, supra, at 1474; see also State ex rel. Cruzado v.Zaleski, Judge (2006), 111 Ohio St.3d 353, 2006-Ohio-5795, ¶ 27. InGensley, the Court specifically ordered, pursuant to its holding inHernandez, that a defendant be immediately released from prison because his "sentencing entries failed to specify that the trial court was imposing a term of postrelease control, and his sentence expired before Am. Sub. H.B. No. 137 took effect." Gensley, supra at 1474.
 {¶ 77} Most recently, the Court discussed the procedure to be followed when a trial court failed to include postrelease control as part of the sentence of a defendant sentenced before Am. Sub. H.B. 137 went into effect. The Court emphasized that only the sentencing court, not the Adult Parole Authority, is authorized to correct the judgment to include postrelease control, and that the correction must be made " before theoffender is released from prison. " Zaleski, supra at ¶ 29. The Court clearly restated its holding in Hernandez: a "trial court's noncompliance with the truth-in-sentencing provisions [can] not be cured by resentencing after the journalized prison term ha[s] expired * * * ."Zaleski at ¶ 23 (emphasis in original).
 {¶ 78} In sum, under Hernandez and the Ohio Supreme Court's subsequent holdings in Adkins, Gensley, Watkins, and Zaleski, the APA, under the facts in the present case, was clearly not empowered to exercise postrelease control over defendant. Therefore, I find no merit in the argument that defendant was required to register as a sexually oriented offender in Cuyahoga County because the APA ordered him to report there.[4]
Speedy Trial
 {¶ 79} Moreover, because defendant was incarcerated on an invalid and illegal parole hold, the triple-count provision of the speedy trial statute required that the state bring him to trial within 90 days of his arrest. Because the state waited until defendant had completed his six-month term of incarceration for the postrelease control violation before it even arraigned him on the instant charge, the state failed to bring him to trial within the statutorily mandated time frame.
 {¶ 80} Subject to the tolling provisions set forth in R.C. 2945.72, a person charged with a felony must be brought to trial within 270 days after arrest. R.C. 2945.71(C)(2). When calculating the amount of time to be counted toward the speedy trial clock, each day a defendant is incarcerated counts as three days. R.C. 2945.71(E). On the other hand, if a defendant is incarcerated pursuant to an arrest for both the pending indictment and pursuant to a valid parole hold, the "triple-count provision of R.C. 2945.71(E)" does not apply. State v.Brown (1992), 64 Ohio St.3d 476, 482.
 {¶ 81} In the present case, however, defendant was arrested on April 16, 2004, on warrants arising from indictments charging him with failure to register, the instant offense, and escape, a charge that was later dismissed. After waiving extradition, defendant was incarcerated in an Ohio state correctional facility from May 18, 2004, until November 12, 2004, when he was turned over to Cuyahoga County for arraignment and prosecution for failure to register.
 {¶ 82} In his speedy trial motion below, defendant argued that he was never lawfully on postrelease control, that the 180-day term of incarceration for a violation of postrelease control was thus unlawful, and that the 180-day period during which he was incarcerated extended well beyond the 90-day statutory period within which the state should have brought him to trial on the instant charge. (Defendant's Motion to Dismiss; Tr. 68.) The state argued, on the other hand, that the speedy trial clock did not begin to run until defendant was arraigned after the completion of the 180-day prison sentence. On appeal, the state argues simply that defendant failed to make a prima facie showing below that his speedy trial rights had been violated.
 {¶ 83} The speedy trial clock expired when defendant was serving a six-month term of incarceration for the postrelease control violation. Although a defendant may not avail himself of the triple-count provision of 2945.71(E) when he is concurrently incarcerated pursuant to a parole hold, the state nonetheless bears the burden of demonstrating that the parole hold was a valid one. Brown, supra. Here, the state failed to meet this burden.
 {¶ 84} Finally, I must note the majority has mischaracterized defendant's actions in the present case. First, the majority describes the defendant's declining to sign the "Explanation of Duties to Register as a Sex Offender" form as "refusing." Had defendant been required to sign the document, or if it had been established that defendant boldly asserted his rejection, then his rejection might well be deemed a refusal. What the record indicates, however, is merely that he declined to sign the document, which had inaccuracies in it.
 {¶ 85} The majority then changes its description from a refusal to permission when it further claims he "impliedly consented" to the APA's actions by "permit[ing] the APA to assume he was returning to Cleveland." The facts do not permit such a conclusion. Defendant merely declined to sign a document that inaccurately stated his expected residence. It was not his responsibility to advise the APA of its error. Without such a responsibility, his silence cannot be the basis for concluding, as the majority does, that his expected residency would be in Cleveland — especially when he had clearly declined to sign the document. The majority further describes defendant's behavior as "contumacious." It is curious that declining to sign a document filled with errors would be considered disobedient or obstinately resisting authority, all synonyms of "contumacious." It is also curious that mere silence could be so openly insulting as to be deemed contumacious. The majority speculates that defendant wilfully circumvented the law because "[a]pparently, [he] was aware of a line of appellate decisions that held that without a journal entry stating a convicted offender would be subject to post-release control, upon that person's release from prison, the Adult Parole Authority ("APA") had no jurisdiction over that offender." The majority cites to State v. Jordan, a case decided nearly two years after defendant was released from prison.
 {¶ 86} There is no evidence in the record, moreover, that defendant had any legal training. Nor is there evidence that he possessed psychic powers enabling him to foresee the Ohio Supreme Court's holdings inJordan and Hernandez. In fact, the record shows almost nothing about the personal qualities of the defendant. There are no details whatsoever as to the manner in which defendant declined to sign the proposed document or his purpose. Without more, to arbitrarily choose an explanation from a lengthy list of possible purposes for defendant's not signing the form goes beyond judicial discretion.
 {¶ 87} In sum, and for all of the foregoing reasons, I would reverse defendant's conviction. Such a result would in no way affect defendant's continuing duty, pursuant to his conviction in Case No. 357976 and the requirements of R.C. 2950.04, to register as a sexually oriented offender in any county in which he resides or is temporarily domiciled.
[1] Although the Adult Parole Authority's supervision of convicted felons is now referred to as "postrelease control" rather than "parole," the Adult Parole Authority's actions in detaining a defendant for a violation of postrelease control is still referred to as a "parole hold." 
[2] The majority's assertion that defendant knew, when he walked out of prison after five years of imprisonment, that he would establish residency in Massachusetts, is pure conjecture. Contrary to the majority's speculation, there is no evidence in the record before us that defendant knew at the time he left prison that he would establish Massachusetts residency, either temporary or permanent. In any event, as discussed infra, R.C. 2950.04 does not require that a defendant tell authorities where he plans to or might possibly establish residency. It requires only that he register where he actually establishes residency.
[3] It is uncontested that the state was well aware that defendant had never been lawfully placed on postrelease control. Indeed, on April 26, 2005 — one week before the trial in the present case and more than six months after defendant had completed a six-month term of imprisonment for the postrelease control violation — the state filed a motion in the trial court in Case No. 357976 conceding that defendant's sentence was "incomplete" and therefore "void" because he had not been notified of the term of postrelease control:
 Now comes Cuyahoga County Prosecuting Attorney William D. Mason, by and through his undersigned assistant T. Allan Regas, and respectfully moves this [sic] to resentence Defendant, whereas Defendant's sentence was incomplete and, as such void pursuant to R.C. 2929.14(F), R.C. 2967.28, and State v. Jordan (2004), 104 Ohio St.3d 21, 817 N.E.2d 864, 2004-Ohio-6085.
Appellant's Brief, Appendix K.
[4] The validity of the APA's imposition of postrelease control and its subsequent finding that defendant was in violation of postrelease control are addressed herein as they relate to the question of whether defendant was required to register as a sex offender in Cuyahoga County, and whether the parole hold was valid for purposes of speedy trial analysis. The question of whether the APA was authorized to impose postrelease control, as well as the legality of any court imposing a term of postrelease control after defendant has fully served his sentence in Case No. 357976, are not issues presently before this court. I agree with the majority that defendant's only remedy regarding the unlawful term of postrelease control is by writ. Nothing in this opinion would preclude defendant, insofar as he is still under the APA's unauthorized supervision, from filing a writ and challenging any prior or continuing term of postrelease control.