Fischer, J., dissenting.
{¶ 66} I respectfully dissent. When a defendant pleads guilty to a new felony offense while on postrelease control for a prior felony, Crim.R. 11(C)(2)(a) does not require a trial court to advise that defendant at the plea hearing for the new felony offense of the court's sentencing discretion under R.C. 2929.141(A) to terminate the defendant's existing postrelease control and impose a consecutive prison sentence for the postrelease-control violation.
I. This case is not moot
{¶ 67} As the lead opinion notes, there is nothing in the record before this court to show that after the court of appeals' remand of the case, appellee, Dustin Bishop, entered a new guilty plea to possession of heroin and that the trial court accepted this new guilty plea and resentenced him. Because the record before us indicates that there is a live controversy, this case is not moot.
{¶ 68} Moreover, despite the analysis set forth in the lead opinion and as the opinion concurring in judgment only explains, we need not consider this court's ability to address moot questions of law; even if the trial court had accepted a guilty plea and resentenced Bishop pursuant to the appellate court's remand of the case, our precedent is clear that the trial court lacked jurisdiction to do so. See State v. Washington , 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 8. Neither party challenges our decision in Washington ; Washington remains good law. Any purported resentencing after the state had perfected its appeal could not, therefore, render the certified-conflict question before this court moot.
*782 II. Crim.R. 11(C)(2)(a) does not require advisement of a trial court's R.C. 2929.141(A) discretionary authority
{¶ 69} The lead opinion contains the conclusion that "[b]y any fair reading of Crim.R. 11(C)(2), the potential R.C. 2929.141(A) sentence was part of the 'maximum penalty involved' in this case." Lead opinion at ¶ 17. This conclusion is not supported by our caselaw interpreting the language of Crim.R. 11(C)(2)(a).
{¶ 70} " Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty * * *."
*174 State v. Veney , 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. Pursuant to Crim.R. 11(C)(2)(a), a trial court shall not accept a plea of guilty without
[d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved , and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
(Emphasis added.)
{¶ 71} Crim.R. 11(C)(2)(a) sets out distinct concepts. See State v. Jones , 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 22. One of these distinct concepts is that the trial court must inform the defendant who is pleading guilty of "the maximum penalty involved."
{¶ 72} This court, in an opinion that analyzed a prior version of Crim.R. 11(C)(2)(a), determined that " 'the maximum penalty' " is the penalty "for the single crime for which 'the plea' is offered." State v. Johnson , 40 Ohio St.3d 130, 133, 532 N.E.2d 1295 (1988), quoting former Crim.R. 11(C)(2)(a), 46 Ohio St.2d xxxi, xxxii (effective July 1, 1976). The lead opinion distinguishes this court's analysis in Johnson on the bases that Crim.R. 11(C)(2)(a) has since been amended to allow for a single plea to apply to multiple charges and that the facts in Johnson are dissimilar to the facts in this case.
{¶ 73} While we did interpret a prior version of Crim.R. 11(C)(2)(a) in Johnson , the plain language of the rule still demonstrates that " Crim.R. 11 applies only to the entry and acceptance of the plea," Johnson at 134, 532 N.E.2d 1295, and that "the reasonable interpretation of the text is that 'the maximum penalty' is for the single crime [now "crimes"] for which 'the plea' is offered" (emphasis added), id. at 133, 532 N.E.2d 1295. In Johnson , the specific facts of the case had no bearing on this court's interpretation of the language of former Crim.R. 11(C)(2)(a). The court reviewed the plain language of former Crim.R. 11(C)(2)(a) and determined that "the maximum penalty involved" means the penalty for the "crime" for which "the plea" was offered, not that "the maximum penalty involved" means any and all possible future consequences of the plea.
{¶ 74} A plea of guilty is a complete admission of the defendant's guilt of the offense or offenses to which the plea is entered. Crim.R. 11(B)(1). As used in the Revised Code, the term "offenses" includes "aggravated murder, murder, felonies of the first, second, third, fourth, and fifth degree, misdemeanors of the first, second, third, and fourth degree, minor misdemeanors, and offenses not specifically classified." R.C. 2901.02(A). Thus, a guilty plea is entered to a charged offense, and "the maximum penalty involved" is the maximum penalty for that *175 offense to which the defendant pleads guilty and not additional or collateral possible punishments that are an indirect consequence of the guilty plea. *783 {¶ 75} The judicial sanction that the trial court could impose for a defendant's violation of the terms of his or her postrelease control is not a part of the penalty for the offense to which the plea is entered; instead, it is a potential sanction for the defendant's postrelease-control violation. The defendant's existing postrelease control is a part of his or her prior felony sentence, see Woods v. Telb , 89 Ohio St.3d 504, 512, 733 N.E.2d 1103 (2000) ; State v. Qualls , 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 34 (Lanzinger, J., dissenting), not the sentence for the offense to which the defendant is later pleading guilty. Therefore, a defendant's punishment for violating the terms of postrelease control, a part of the defendant's prior sentence, cannot be considered a part of "the maximum penalty involved" for the criminal offense to which the current plea is entered.
{¶ 76} This conclusion is supported by the language of R.C. 2929.141(A). That statute specifically provides that "[u]pon * * * [a] plea of guilty to a felony by a person on post-release control at the time of the commission of the felony, the court may terminate the term of post-release control, and the court may * * * impose a prison term for the post-release control violation ." (Emphasis added.) R.C. 2929.141(A)(1). The General Assembly made it clear that the judicial sanction permitted under R.C. 2929.141(A) is not imposed for the offense but may be imposed for the violation of the terms of the defendant's existing postrelease control. It is our duty to give effect to the words used in the statute, not to insert or delete words. Cline v. Bur. of Motor Vehicles , 61 Ohio St.3d 93, 97, 573 N.E.2d 77 (1991). Thus, pursuant to the plain language of R.C. 2929.141(A), the penalty for violating the terms of postrelease control cannot also be considered "the maximum penalty involved" for the new offense to which the plea is entered.
{¶ 77} The lead opinion would expand this court's interpretation of "the maximum penalty involved" to include a judicial sanction that may be imposed for the defendant's violation of the terms of his or her existing postrelease control by committing a felony offense. That conclusion is reached by relying on the proposition that "the sentence for committing a new felony while on postrelease control and that for the new felony itself [are] inextricably intertwined." Lead opinion at ¶ 17. The trial court's discretionary sentencing authority should have no bearing on this court's interpretation of Crim.R. 11(C), which governs strictly what occurs at a plea hearing. The implicit definition of "the maximum penalty involved" that is found in Crim.R. 11(C) has not changed since we decided Johnson , and as we stated in that case, Crim.R. 11(C) "has no relevance to the exercise of the trial court's sentencing discretion at [the plea hearing] other than directing the court to proceed with or impose sentencing," 40 Ohio St.3d at 134, 532 N.E.2d 1295. The effect of the lead opinion would be to make "the maximum *176 penalty involved" include the speculative consequences of the plea in addition to the penalty for the charged offense to which the defendant is pleading guilty. Pursuant to R.C. 2929.141(A)(1), the trial court may "impose a prison term for the post-release control violation" that "shall be the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under the post-release control for the earlier felony." The trial court, without knowing the terms of the defendant's prior felony sentence, specifically the terms of the defendant's existing postrelease control, will not be able to inform the defendant of "the maximum penalty involved." At best, under the lead opinion's interpretation *784 of Crim.R. 11(C)(2)(a), the trial court would be able to inform the defendant of an indeterminate range-from one year to a period of time that is equal to the time left on the defendant's postrelease-control term, whatever that might be-that the court may impose, at its discretion, that could be added to the defendant's sentence for the postrelease-control violation. The lead opinion would add confusion to "the maximum penalty involved" and would leave the defendant to speculate as to "the maximum penalty" that he or she would receive for pleading guilty to the felony offense. Crim.R. 11(C)(2)(a), the statutes governing postrelease control, and our caselaw simply do not support the lead opinion's conclusion in this case.
{¶ 78} In order for the trial court to accept a guilty plea to a charge of possession of heroin in violation of R.C. 2925.11(A), the court must inform the defendant of "the maximum penalty involved" when a defendant is convicted of possession of heroin. The following exchange occurred at Bishop's plea hearing:
THE COURT: The charge you're pleading guilty to is classified as a felony of the fifth degree. With that classification, the maximum penalty in terms of incarceration is 12 months in prison. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: The maximum penalty in terms of a fine is $2,500. Do you understand that?
THE DEFENDANT: Yes.
(Capitalization sic.) The trial court informed Bishop of "the maximum penalty involved" for a possession-of-heroin offense.
{¶ 79} I would hold that the trial court complied with Crim.R. 11(C)(2)(a) by notifying Bishop of "the maximum penalty involved" for his possession-of-heroin offense. Crim.R. 11(C)(2)(a) did not require that the court inform Bishop of its discretionary authority under R.C. 2929.141(A) to sentence him to a consecutive *177 term of incarceration for violating the terms of the postrelease control that was imposed as a part of his prior felony conviction.
III. When does the trial court need to inform a defendant of its R.C. 2929.141(A) discretionary authority?
{¶ 80} One potential criticism of determining that the term "the maximum penalty involved" used in Crim.R. 11(C)(2)(a) does not include the potential penalty that may be imposed by the trial court under R.C. 2929.141(A) is that the defendant may not be made aware of such possible consequence. This criticism, however, is speculative.
{¶ 81} This court has previously held, applying the plain language of R.C. 2929.19(B)(2)(e), that "the statute does not require that a trial court notify an offender at his initial sentencing hearing of the penalty provisions contained in R.C. 2929.141(A)(1) and (2) (provisions that apply only when an offender is convicted of committing a new felony while serving a period of postrelease control)." State v. Gordon , 153 Ohio St.3d 601, 2018-Ohio-1975, 109 N.E.3d 1201, ¶ 2 ; see also State v. Grimes , 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 19 (holding that a trial court need not identify in a sentencing entry the judicial sanctions that may be imposed for violating the terms of postrelease control).
{¶ 82} In this case, Bishop asserts that his plea was not knowingly, intelligently, and voluntarily made because the trial court did not advise him of its discretionary authority under R.C. 2929.141(A) to revoke his existing postrelease control and *785 impose a consecutive prison term for violating the terms of his postrelease control. Bishop argues that Crim.R. 11(C)(2)(a) requires that advisement as a part of "the maximum penalty involved" and that the trial court's failure to follow Crim.R. 11 violated his federal due-process rights. As explained above, Crim.R. 11(C)(2)(a) does not require such an advisement; therefore, the trial court did not violate Bishop's due-process rights when it did not advise him of its R.C. 2929.141(A) authority.
{¶ 83} The parties did not raise on appeal whether any statute, constitutional guarantee, or rule other than Crim.R. 11(C)(2)(a) independently requires that a defendant pleading guilty to a felony be informed at his or her initial sentencing hearing or in the sentencing entry in which the trial court imposes his or her postrelease control of the trial court's ability to later revoke that postrelease control and impose a consecutive prison term when the defendant is convicted of or pleads guilty to a new felony offense. Nor did the parties raise whether any other rule, statute, or constitutional guarantee requires that the defendant be provided such information at any other time.
{¶ 84} A defendant is not foreclosed from raising other arguments-statutory, rule-based, or constitutional-to attack the validity of a judicial sanction imposed *178 pursuant to R.C. 2929.141(A) when that defendant feels that the information provided prior to the judicial sanction being imposed was insufficient. In my opinion, however, a defendant cannot successfully base such a challenge on the language of Crim.R. 11(C)(2)(a), which is the only issue at bar.
IV. The new requirement proposed by the lead opinion under Crim.R. 11(C)(2)(a) would place an unreasonable burden on trial courts
{¶ 85} The new requirement proposed by the lead opinion under Crim.R. 11(C)(2)(a) would place an unreasonable burden on trial courts in many cases. I foresee multiple problems that this requirement would create for trial courts attempting to comply with Crim.R. 11(C)(2)(a), and this new requirement might allow certain defendants to abuse the system.
{¶ 86} As a result of the new requirement proposed in the lead opinion, if a trial court failed to inform a defendant of a potential and speculative judicial sanction, the defendant's guilty plea would not be valid. The lead opinion does not include an explanation of what would happen when the court is not aware of the defendant's existing postrelease control. In many cases, the judicial sanction will not be imposed by the judge that sentenced the defendant to postrelease control in that defendant's prior felony case; indeed, the prior felony conviction may not even have been entered in the same jurisdiction. See State v. Hicks , 5th Dist. Delaware No. 09CAA090088, 2010-Ohio-2985, 2010 WL 2595153, ¶ 9 ; State v. Dixon , 5th Dist. Stark No. 2008CA00254, 2009-Ohio-3137, 2009 WL 1835006, ¶ 20.
{¶ 87} Moreover, as noted above, pursuant to R.C. 2929.141(A)(1), the trial court may "impose a prison term for the post-release control violation" that "shall be the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under the post-release control for the earlier felony." Thus, to comply with the requirement proposed in the lead opinion, the trial court would need to inform the defendant of the maximum penalty involved, but the trial court would have to know not only that the defendant was serving a period of postrelease control but also know the details of the underlying felony conviction *786 and of the defendant's existing postrelease-control term.
{¶ 88} This would place an unreasonable burden on the trial court to be aware of every defendant's existing postrelease control. The trial court is often not made aware of the defendant's existing postrelease control and prior felony convictions until after the plea hearing through a presentence-investigation report. See R.C. 2951.03 ; Crim.R. 32.2. Would trial courts now be required to do their own investigation prior to a guilty plea? Would prosecuting attorneys now be required to provide the trial court with the defendant's rap sheet prior to the plea? Or would it be the defendant's burden to provide such information, as the defendant is likely the only individual to know whether or not he or she is on postrelease *179 control? If it would be the defendant's burden to inform the trial court, then any error by the trial court would have been invited by the defendant. And what would happen if a defendant pleaded guilty at arraignment? Would trial courts be required to delay such a plea in order to conduct such an investigation?
{¶ 89} Further, the practical reality of the position taken by the lead opinion is that it might allow for the potential abuse of our plea system. When a defendant, who is likely in the best position to inform the trial court that he or she is serving a period of postrelease control, fails to provide that information to the trial court, the court will not provide notice of "the maximum penalty involved." Moreover, if the defendant waives a presentence-investigation report, see R.C. 2951.03(A)(1), then that court might not revoke the defendant's postrelease control at sentencing at all. The practical implication of this court adopting the lead opinion's conclusion would be that the defendant then could successfully argue that his plea was not knowingly, intelligently, and voluntarily made simply based on an error that the defendant had invited. And the defendant would not be required to show prejudice because "the trial court completely failed to inform [the defendant] that a consecutive prison sentence under R.C. 2929.141(A) was possible," lead opinion at ¶ 20, even though the lengthier sentence was not realistically possible because the trial court could not impose the lengthier sentence without having the information that the defendant withheld from the trial court. In that scenario, a defendant who had suffered no prejudice would get another bite at the apple simply because that defendant failed to provide to the trial court information related to the defendant's existing postrelease control.
{¶ 90} The conclusion of the lead opinion would likely place an unreasonable burden on the trial court and might provide defendants who are on postrelease control with the opportunity to abuse the plea system.
V. Conclusion
{¶ 91} I would reverse the judgment of the Second District Court of Appeals and hold that pursuant to Crim.R. 11(C)(2)(a), a trial court does not need to advise a criminal defendant on postrelease control for a prior felony, during a plea hearing in a new felony case, of the trial court's ability under R.C. 2929.141(A) to terminate the defendant's existing postrelease control and impose a consecutive prison sentence for the postrelease-control violation. Therefore, I respectfully dissent.
Brown, J., concurs in the foregoing opinion.